528 So.2d 447 (1988)
DEPARTMENT OF TRANSPORTATION, Appellant,
v.
BLACKHAWK QUARRY COMPANY OF FLORIDA, INC., Appellee.
No. 87-1336.
District Court of Appeal of Florida, Fifth District.
June 23, 1988.
Rehearing Denied July 20, 1988.
*448 Gregory G. Costas, Appellate Atty., and Thomas H. Bateman, III, General Counsel, Tallahassee, for appellant.
Harold F.X. Purnell of Oertel & Hoffman, P.A., Tallahassee, for appellee.
SHARP, Chief Judge.
This appeal presents the question of whether two Department of Transportation (DOT) pronouncements are administrative rules and thus invalid because they were not promulgated in accordance with our Administrative Procedure Act (APA), specifically section 120.54, Florida Statutes (1987). Blackhawk Quarry Company of Florida, Inc. filed a petition pursuant to section 120.56, Florida Statutes, to invalidate the provisions as rules. The Department of Transportation (DOT) also claimed Blackhawk lacked standing to seek this relief. After a full hearing, the hearing officer ruled in Blackhawk's favor. We affirm in part.
Blackhawk first questioned section 915 of DOT's Standard Specifications for Road and Bridge Construction, as amended in October, 1986. It consists of a two-page definition for the composition of cemented coquina shell material. It is contained in DOT's one hundred seventy-eight page standard specifications manual, which is incorporated into all of DOT's road and bridge construction contracts. Blackhawk later challenged DOT's Standard Operating Procedure for Evaluation, Approval and Control of Mineral Aggregate Sources: Limerock, Cemented Coquina and Shell Base Materials, as amended May, 1986, referred to as "SOP."
The hearing officer found that section 915 defines the composition of cemented coquina shell material, provides for approval of material sources in accordance in the SOP, and provides that the material shall be free of specified deleterious substances and sets forth the physical and chemical properties of the material. The SOP is a twenty-eight page document which establishes DOT's policy "of accepting limerock, cemented coquina and shell base materials produced for Department use through a producer quality control (QC) program [and] provides the producer with information related to the methods and levels of source approval, the minimum requirements of QC programs and approval, and the criteria by which the Department will maintain that approval." Pursuant to the SOP state contractors must select a producer from the DOT approved sources list.
*449 Appellee Blackhawk owns a mine in Brevard County which produces cemented coquina shell for use as a base material in the construction of roads. After being a DOT approved source for such material for several years, approval was suspended for failure to meet the carbonate requirement of section 915. As a result of DOT's action, Blackhawk's material from its own mine cannot be used by prime contractors on DOT projects, and Blackhawk is not acceptable as an approved source to supply coquina materials.
The hearing officer found that Blackhawk had standing to challenge the provisions and concluded that both section 915 and the SOP are rules within the APA in that they each "prescribe and implement law and policy and apply generally to any producer who seeks source approval." We affirm this conclusion as to the SOP, but reverse as to section 915.
Florida Administrative Procedure Act, section 120.50, et seq., Florida Statutes (1987) provides a framework for most administrative agency action.[1] The Act contains detailed provisions governing the promulgation of agency rules, section 120.54, Florida Statutes, and in section 120.52(16) defines a "rule" as an:
agency statement of general applicability that implements, interprets, or prescribes laws or policy or describes the organization, procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.
In considering whether a particular agency pronouncement constitutes a "rule," the First District has enunciated the following test:
[a]ny agency statement is a rule if it "purports in and of itself to create certain rights and adversely affect others," [citation omitted], or serves "by [its] own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law" [citation omitted].
Balsam v. Department of Health and Rehabilitative Services, 452 So.2d 976, 977-978 (Fla. 1st DCA 1984), quoting from State, Department of Administration v. Harvey, 356 So.2d 323, 325 (Fla. 1st DCA 1977).
In applying this test, the First District held in Harvey that minimum training and experience requirements imposed upon all state career service employment were invalid because they were not created by rule. In Balsam, the court held that a moratorium on receipt of certificate of need applications for hospitals imposed by HRS was a rule because it was consistently applied to all applications. In McCarthy v. Department of Insurance and Treasurer, 479 So.2d 135 (Fla. 2d DCA 1985), cause dismissed, 485 So.2d 832 (Fla. 1986), the Second District held that a letter from the State Fire Marshal setting out qualifications for obtaining a state fire inspector's certificate prescribed policy and attempted to implement section 633.081, Florida Statutes and thus was rule.
Conversely, in State Department of Commerce v. Matthews Corp., 358 So.2d 256 (Fla. 1st DCA 1978), the First District found that wage rate determinations applicable to a public construction contract were not rules because each determination was applicable only to construction of the particular public building specified in the determination and had no prospective application to any other contract. The court in Matthews explained:
Matthews sought to have seven wage determinations, specifically dealing with rates in the City of Tampa, declared invalid rules. The hearing officer found the determinations were rules, as defined by Section 120.52(14), because (1) they directly implemented Section 215.19, and (2) uniformly applied to all contractors in each geographic area where the public work project was located. As a result, since they had not been adopted in compliance with Chapter 120, they were declared invalid. We disagree with the *450 hearing examiner. The determinations are not statements of general applicability. While wage determinations must be included within the specifications of each public works contract in the state, the determination, by agency Rule 8C-2.05, Fla. Admin. Code, is applicable only to the construction of the particular public building or other work specified in the determination. The determination thus has temporal as well as geographical limitations. The determinations have no prospective application to any other contract  only the specific project involved in the particular location. Nor do they set wage standards for affected persons extending some indefinite time into the future. The wage determinations may be considered informal "orders" which can be subjected to Section 120.57 proceedings. [Footnotes omitted].
358 So.2d at 258. See also Neff v. Biltmore Construction Co., Inc., 362 So.2d 442 (Fla. 1st DCA 1978).
DOT contends both section 915 and the SOP are similar to the wage rate determinations in Matthews. The SOP however is clearly an agency statement of general applicability implementing or prescribing agency policy. The SOP begins:
This Standard Operating Procedure (SOP) establishes the Florida Department of Transportation's policy of accepting limerock, cemented coquina and shell base materials produced for Department use through a producer Quality Control (QC) Program.
It goes on to set forth specific criteria and requirements pursuant to which a source of cemented coquina shell will be approved by the agency for placement on its published list of approved sources of supply. By announcing these criteria which will determine entitlement to participation in state projects, the SOP "in and of itself creates certain rights and adversely affects others." Balsam, 452 So.2d at 977. It has a direct effect on suppliers. See Straughn v. O'Riordan, 338 So.2d 832 (Fla. 1976) (standards attempted to be applied to applicant for sales tax registration when Department of Revenue required bond as condition to registration were "rules" under APA). It seems that DOT itself recognized this by soliciting input from several mineral and contractor associations prior to promulgation of the SOP.[2]
Conversely, section 915 simply sets out specifications for acceptable coquina material as part of the comprehensive standards for state road and bridge construction. It is more in the nature of a contract term between the contractor and DOT as opposed to a rule. See San Marco Contracting Co. v. State, 386 So.2d 615, 617 (Fla. 1st DCA 1980). This provision has at most an indirect effect on Blackhawk. Blackhawk may be able to obtain qualifying coquina material from other sources, or from its own mine, after additional refining efforts.
Accordingly, we affirm the hearing officer's conclusion that the SOP is a rule but reverse the conclusion insofar as section 915 is concerned.
AFFIRMED IN PART, REVERSED IN PART.
DAUKSCH and COWART, JJ., concur.
NOTES
[1] Not every activity of an administrative agency is controlled by the Act. See, e.g., Friends of the Everglades, Inc. v. South Florida Regional Planning Council, 456 So.2d 491 (Fla. 3rd DCA 1984) (information-gathering activities of regional planning council staff did not involve entry of a rule or order sufficient to constitute "agency action" under Act).
[2] Such selective solicitation of input diminishes DOT's argument that it would be unduly burdensome to impose rulemaking requirements on it.