946 So.2d 1084 (2006)
VOLUSIA COUNTY SCHOOL BOARD, Appellant,
v.
VOLUSIA HOMES BUILDERS ASSOCIATION, INC., Appellee.
No. 5D05-3535.
District Court of Appeal of Florida, Fifth District.
November 17, 2006.
Rehearing Denied January 25, 2007.
*1086 Stephen H. Grimes and Lawrence N. Curtin, of Holland & Knight LLP, Tallahassee, and F.A. Ford, Jr. of Landis, Graham, French, P.A., Deland, for Appellant.
C. Allen Watts, of Cobb & Cole, P.A., Deland, for Appellee.
THOMPSON, J.
The Volusia County School Board ("School Board") appeals an Administrative Law Judge's ("ALJ") ruling that the School Board's recommendation to the Volusia County Council ("County Council") to increase the school impact fee constituted either the enactment of a rule or the amendment of a pre-existing rule. The County Council adopted the recommendation and increased the impact fee to $5284. The Volusia Home Builders Association, Inc. ("VHBA"). filed a petition for determination of unadopted and invalid rule, which asserted that the School Board's recommendation constituted either the enactment of a rule or the amendment of a pre-existing rule. After hearing, the ALJ agreed with the VHBA. The School Board argues the recommendation was neither a rule nor rule amendment, and that the VHBA lacked standing to challenge the recommendation. We agree and reverse.

FACTS
In 1993, the School Board adopted Policy 612.[1] Section 1 provided:
The purpose and intent of this rule is to determine and declare the policies of the Volusia County School Board for the financing, construction and utilization of educational facilities. These policies, as adopted, reviewed and from time to time revised, contain the certifications of the Board contemplated in Ordinance 92-9 of the Volusia County Council imposing a countywide school impact fee.
Policy 612 specified how the cost information required by Volusia County Ordinance 92-9 would be determined and reported; it also provided for the automatic calculation and update of impact fees every other year.
In 1997, the County Council enacted Ordinance 97-7, which imposed a new impact fee. Ordinance 97-7 repealed the provisions of Ordinance 92-9 that had been codified as sections 70-151 to 70-169. The new ordinance, codified as sections 70-170 to 70-184, established a method of calculating the impact fee based upon a May 1997 impact fee report. Section 70-175 specified the impact fee's initial amount and provided for annual adjustments based on inflation in school construction costs. These adjustments were subsequently made without School Board action.
Unlike Ordinance 92-9, Ordinance 97-7 did not require the School Board to certify information to the County Council to compute the impact fee. Section 70-184 provided that the impact fee should be reviewed by the County Council at least once every five years, at which time the Council should consider the comments and recommendations of the School Board, the East Coast Building Industry Association, Inc. or its successor, and other interested persons. The ordinance provided that the School Board or County Council's failure *1087 to initiate timely review would not affect the ordinance's validity.
In 2004, the School Board engaged Tindale-Oliver & Associates, Inc. ("Tindale-Oliver") to review the Volusia County impact fee. Tindale-Oliver prepared a school impact fee update and presented two options for the proposed impact fee. Tindale-Oliver recommended the first option, which provided impact fees that varied depending on the proposed dwelling unit. The other option, which the Superintendent favored, specified a single proposed impact fee. In a 26 January 2005 meeting, the School Board voted to recommend that the County Council choose the second option.
On 24 February 2005, the County Council considered at public hearing the proposed change and recommendation from the School Board. The minutes reflected that the fee and proposed amendment were consistent with the comprehensive plan, that the staff recommended approval, and that the School Board was comfortable with the proposed changes. The minutes also showed that two studies had been conducted. The VHBA had objected to the first study, which was the School Board's previous, in-house study that proposed an impact fee of approximately $3165. The Tindale-Oliver study used more recent data that resulted in a higher proposed impact fee of $5284. The VHBA had not conducted an independent study. Tindale-Oliver engineer Bob Wallace delivered a presentation on the impact fee study and its methodology. The Superintendent and another School Board representative requested that the council adopt the impact fee.
The VHBA argued against adopting the fee. Notably, it argued at hearing that "[t]he action which Council is being asked to take is an ordinance of Volusia County and not a rule or policy of the School District. If this is challenged, Volusia County would be the defendant and would have to refund the money if there's a decision to do that." It did not challenge Tindale-Oliver's expertise and assumed that most of the underlying data was valid. The VHBA said it would not challenge a $3000 impact fee.
The minutes reflect statements from twelve individuals, most supporting and some opposing the $5284 impact fee. Council Member Long inquired further about impact fee discussions between VHBA and the School Board. Council Members Alexander and Hayman argued for a lower fee of $3000 or $3100. Council Member Lewis expressed disappointment that the VHBA did not procure a professional study though the issue had been discussed since August 2004. County Chair Bruno noted the council asked everyone to do a study in November 2004, and he supported the $5284.
Council Member Alexander moved to amend the proposal to provide a lower impact fee of $3100 and to send the School Board and VHBA to mediation, but the Council rejected the motion, five to two. Council Member Persis moved to adopt the proposed ordinance, and the motion passed six to one. The County Council then enacted Ordinance 2005-01, amending Chapter 70 of Article V of the Code of Ordinances, which imposed an increased impact fee in the amount recommended by the School Board. This ordinance returned to the indexing mechanism of Ordinance 92-9 by requiring the School Board to provide biannually the cost information necessary to automatically update impact fees.
VHBA petitioned for determination of unadopted and invalid rule in April 2005. It alleged that the School Board's recommendation constituted an unpromulgated rule. The School Board claimed the action *1088 was not a rule, but conceded that, if it was, then the action was not adopted by proper rulemaking procedure. VHBA argued that, because only the School Board can establish levels of service, the County Council: 1) was required to accept the proposed impact fee; 2) accepted the update "as gospel"; and 3) incorporated the update into the 2005-01 ordinance.
A School Board attorney testified that the study's purpose was to provide a recommendation to the County Council. He read from section 70-184, as it existed before the 2005 revision, which provided that the County Council would review the impact fee in light of comments and recommendations from the School Board, the East Coast Building Industry Association, and other interested persons. Under the ordinance as it existed in January 2005, all the School Board could do was present the recommendation to the County Council. The County Council was not required to adopt the impact fee recommended by the approved study.
In the ALJ's findings of fact, it determined that VHBA members were substantially affected by the School Board's action because of the costs and effects of increased impact fees. The findings discussed extensively provisions of Ordinance 2005-01, adopted in February 2005. Because the School Board accepted the Tindale-Oliver update's option of a flat impact fee, rather than the consultant's recommended alternative, the School Board's recommendation was "an action tantamount to increasing the impact fee to an amount in conflict with the preferred choice of the consultant." The ALJ emphasized that this recommendation, "rather than the Tindale-Oliver recommendation, was ultimately incorporated into Ordinance 2005-01. . . ."
The ALJ's conclusions of law, following its general discussion of Policy 612, suggest that the ALJ believed that Ordinance 2005-01 was in effect when the School Board made its January 2005 recommendation:
37. Notably, a rule is an agency statement of general applicability that implements, interprets, or prescribes law or policy. The preparation or modification of agency budgets is not rulemaking. . . . Consequently, Article VIII(C) of Policy 612, or an equivalent under the Tindale-Oliver "Update" approved by the Respondent, is considered a required rule in the presence of the Volusia County Council's ordinance essentially specifying that the County impact fee determination shall be determined in accordance with the amount or methodology certified to the County by Respondent.

38. Petitioner [sic] has not presented any general or special law applicable to the facts . . . which would not require complete obedience by the Volusia County Council with its own ordinance. . . . [B]y virtue of the County's incorporation of Respondent's level-of-service policy into the County's Comprehensive Plan and Ordinance 2005-01, Respondent has the power to determine, and from time to time revise, the impact of its level-of-service policies upon builders of new dwellings.
39. The power of Respondent to establish and revise the level of service for school facilities . . . is recognized by the Comprehensive Plan and by Chapter 70, Article V of the Code of Ordinances of Volusia County. . . . [I]t is unnecessary and inappropriate in this forum to consider whether the county government . . . could refuse to adopt the level of service . . . established by Respondent's policies.
40. In approval of the Tindale-Oliver Update . . ., and the choice of an option not recommended by Tindale-Oliver, *1089 . . . Respondent necessarily amended Policy 612.
(Emphasis added.)

ANALYSIS
Under section 120.52(1)(b)7., Florida Statutes (2004), the School Board is an agency subject to the Administrative Procedure Act. The School Board denies that its recommendation constituted a rule, but concedes that, if it does, it was not adopted in compliance with section 120.54's rulemaking procedures. We review for competent, substantial evidence factual findings made by an administrative law judge in a rule challenge under section 120.56, Florida Statutes (2004). Dep't of Health v. Merritt, 919 So.2d 561, 562 (Fla. 1st DCA 2006). We review de novo the judge's conclusions of law. Parlato v. Secret Oaks Owners Ass'n, 793 So.2d 1158, 1162 (Fla. 1st DCA 2001).
Section 120.52(15), Florida Statutes (2004), defined a rule as an
agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule.
"[A]n agency statement that . . . requires compliance, creates certain rights while adversely affecting others, or otherwise has the direct and consistent effect of law is a rule." Kerper v. Dep't of Envtl. Prot., 894 So.2d 1006, 1009 (Fla. 5th DCA 2005) (quoting Dep't of Rev. v. Vanjaria Enters., Inc., 675 So.2d 252, 255 (Fla. 5th DCA 1996)); Dep't of Transp. v. Blackhawk Quarry Co. of Fla., Inc., 528 So.2d 447, 449 (Fla. 5th DCA 1988). "Not every activity of an administrative agency is controlled by the [Florida Administrative Procedure] Act." Blackhawk Quarry, 528 So.2d at 449 n. 1 (citation omitted).
A court deciding whether a challenged action constitutes a rule analyzes the action's general applicability, requirement of compliance, or direct and consistent effect of law. We consider three of our previous decisions to be informative. The challenged action in Kerper, the Department of Environmental Protection's document entitled "Corrective Actions for Contaminated Site Cases," was generally applicable and established procedures requiring violators' compliance by using mandatory terms such as "shall." Kerper, 894 So.2d at 1009. Likewise, the Department of Revenue's tax assessment procedure in Vanjaria Enterprises created the department's entitlement to taxes while adversely affecting property owners. Vanjaria Enters., 675 So.2d at 255. The auditors were constrained by the auditing procedure and were afforded no discretion to act outside the scope of the Training Manual containing the procedure. Id. Similarly, in Blackhawk Quarry, the criteria for agency approval of sources of cemented coquina shell determined entitlement to participation in state projects and created certain rights while addressing others. Blackhawk Quarry, 528 So.2d at 450.
The common element in Kerper, Vanjaria Enterprises, and Blackhawk Quarry, which is absent here, is the agency statement's direct effect. Here, the recommendation: (1) did not purport to adversely affect any substantive rights of the VHBA or its members; (2) did not constitute a denial or withdrawal of a right of the VHBA; (3) did not impose any new or additional requirements on the VHBA; and (4) did not have the direct and consistent effect of law. See, e.g., State, Bd. of Trs. v. Lost Tree Vill. Corp., 600 So.2d *1090 1240, 1246 (Fla. 1st DCA 1992). The recommendation had, at most, an indirect effect on VHBA. See Blackhawk Quarry, 528 So.2d at 450.
The VHBA offers little discussion of how the recommendation constituted a rule as defined by statutory and case law; rather, it discusses generally the School Board's responsibility to operate schools and the county's authority to impose impact fees. It argues that Policy 612 must be amended because the 2005 ordinance reintroduced the automatic indexing feature that had been removed by the ordinance in effect when the School Board had made its recommendation. Furthermore, it claims the recommendation had an external effect that rendered it a rule because it was adopted by the 2005 ordinance.
But the recommendation, standing alone, did not require compliance, create certain rights while adversely affecting others, or otherwise have the direct and consistent effect of law. The record shows it had no immediate or binding effect on either the County Council or the VHBA. Rather, the recommendation was considered by the County Council. There, the minutes reflect that the study's merits and proposed impact fee were discussed extensively. A dozen parties, including the VHBA, commented on the proposed impact fee increase. A motion to reduce the proposed impact fee was considered and rejected. Ultimately, the County Council elected to increase the impact fee to the amount requested by the School Board, but the February hearing and subsequent ALJ hearing show that the County Council was free to modify or reject the proposed impact fee.
The County Council's February 2005 decision to impose the increased impact feeswhich, in contrast to the recommendation, did affect the VHBA's rightsdid not retroactively render the January 2005 recommendation into a rule with the direct and consistent force of law. Nor will we consider the School Board's recommendation and approval a rule, despite the VHBA's implication that the recommendation substantially affected its interests because Volusia County, though not legally required to do so, did in fact rely on the recommendation. Cf. Friends of the Everglades, Inc. v. Dep't of Cmty. Affairs, 495 So.2d 1193, 1194-95 (Fla. 3d DCA 1986) (affirming denial of plaintiffs' petition to be heard on an agency's memorandum to county that contained comments, suggestions, and recommendations concerning a proposed local comprehensive plan).
As the School Board notes, portions of the final order suggest that the ALJ believed that Ordinance 2005-01 was in effect when the School Board made its January 2005 recommendation. The ALJ discussed "ordinance essentially specifying that the County impact fee determination shall be determined in accordance with the amount or methodology certified to the County by Respondent." Similarly, paragraph 38 suggests that Volusia County's ordinance requires complete obedience to the School Board's determination of the impact of its level of service policies. The County Council's adherence to the School Board's certifications was a feature of the 1992 and 2005 ordinances, but not the 1997 ordinance in place when the School Board approved the Tindale-Oliver update.
Assuming, alternatively, that the recommendation should be considered an implicit repeal of Policy 612, which contained a certification requirement in accordance with Ordinance 92-9, the VHBA's argument is unavailing. "To constitute `rulemaking' a rule repeal is required to satisfy independently the remainder of the definition of a `rule'" in section 120.52(15). Fed'n of Mobile Home Owners of Fla., Inc. v. Fla. Manufactured Housing Ass'n, Inc. *1091 (Mobile Home), 683 So.2d 586, 590 (Fla. 1st DCA 1996), quoted in Osterback v. Agwunobi, 873 So.2d 437, 440 (Fla. 1st DCA 2004). "A repeal that does not have the effect of creating or implementing a new rule or policy is not a `rule' subject to challenge." Mobile Home, 683 So.2d at 591; accord Osterback, 873 So.2d at 439. We conclude the School Board's January 2005 action was not a rule because it did not adversely affect any of the VHBA's substantive rights, did not require compliance on the part of the County Council or the VHBA, and did not have the direct and consistent effect of law.
We also conclude that the VHBA lacked standing to challenge the School Board's action. Both parties acknowledge that the question of standing is answered by our conclusion the recommendation was not a rule. Nevertheless, we note that the recommendation was too remote and lacked the direct impact necessary to show that the VHBA was "substantially affected" by the recommendation, as opposed to the County Council's imposition of the increased impact fees requested. Lanoue v. Fla. Dep't of Law Enforcement, 751 So.2d 94, 99-100 (Fla. 1st DCA 1999). Notably, the VHBA's testimony regarding the substantial affect of the School Board's action focused entirely on the costs of impact fees. As the VHBA's expert stated, impact fees, not studies, affected the builders. The recommendation's impact remained speculative until the County Council adopted the ordinance that increased the fees; the record shows this result was not a foregone conclusion.
Because the thrust of the VHBA's argument is that the impact fees were improper, the School Board correctly noted that, if the VHBA wished to challenge the increased impact fees, it should have sued Volusia County. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 128 (Fla.2000); St. Johns County v. Ne. Fla. Builders Ass'n, Inc., 583 So.2d 635, 637 (Fla.1991); see also Home Builders & Contractors Ass'n of Palm Beach County, Inc. v. Bd. of County Comm'rs, 446 So.2d 140, 141 (Fla. 4th DCA 1983); Fla. Home Builders Ass'n, Inc. v. County of Volusia, slip op., No. 93-10992-CIDL, Div. 01 (Fla. 7th Cir. Nov. 21, 1996) (cited in Aberdeen at Ormond Beach, 760 So.2d at 129-31, as a case in which the plaintiffs challenged the methodology used in determining the impact fee).
Accordingly, we REVERSE.
MONACO and EVANDER, JJ., concur.
NOTES
[1] Formerly numbered 609.