PER CURIAM.
The Department of Financial Services (hereinafter “Department”) challenges an order of the ALJ finding that the Department applied an agency rule without first initiating the proper rulemaking procedures. Because the ALJ erred in finding that the Department had a “rule” placing the offices of the Capital Collateral Regional Counsel in the executive branch, the order finding an invalid, unpromulgated rule is reversed.

I. Background

This case arose as the direct result of an investigation conducted by the Office of *529 Fiscal Integrity (“OFI”) of the Division of Accounting and Auditing of the Appellant State of Florida Department of Financial Services. In late 2004 and early 2005, the Department received several “whistleblower” complaints which included allegations of improper spending practices on the part of Neal Dupree, the occupant of the State of Florida’s Office of Capital Collateral Regional Counsel-South. The Office of Capital Collateral Regional Counsel-South (“CCRC-S”), is one of the State’s two regional offices of capital collateral counsel authorized by Chapter 27, Part IV, Florida Statutes; the other is the Appellee Office of Capital Collateral Regional Counsel-Middle (“CCRC-M”), headed by Appellee John W. “Bill” Jennings, the Capital Collateral Regional Counsel for the Middle Region. The CCRCs provide collateral lé-gal representation for persons sentenced to death. See § 27.702(1), Fla. Stat. (2006).
In March of 2005, OFI initiated an investigation of certain allegations presented in the complaints that identified possibly questionable spending by Dupree. Ultimately, on August 29, 2006, a document entitled “Report of Investigation: Neal Dupree, Capital Collateral Regional Counsel, South Office, Case Number IV-20050400001” was issued by the Department’s Division of Accounting and Auditing, Office of Fiscal Integrity (“the Horn Report”). The Horn Report’s primary focus was CCRC-S Dupree. The investigation confirmed allegations that Mr. Dupree hired outside lobbyists with state funds to represent his office. In the course of their investigation of state spending by Dupree on lobbyists, OFI investigators happened to discover that Mr. Dupree and Mr. Jennings acted in concert to pay the same lobbyist to represent the'CCRCs before the Florida Legislature. The Horn Re-' port recommended that the' Department of Financial Services legal staff initiate action against Dupree and Jennings to recover State of Florida funds that were inappropriately paid by them to lobbyists in violation of section 11.062, Florida Statutes.[1] OFI’s recommendation was never acted upon by the Chief Financial Officer. No action to subtract funds from the salary of either Mr. Jennings or Mr. Dupree was ever commenced by the Department.
On September 19, 2007, a petition styled “Rule Challenge Petition Pursuant to 120.56(4)” was filed with the Division of Administrative Hearings. Identified as petitioners were the “Capital Collateral Regional Counsel-Middle Region” and “John W. ‘Bill’ Jennings, Capital Collateral Regional Counsel.” The petition alleged that the Florida Department of Financial Services had applied an unadopted and unwritten rule, as defined by section 120.52(15), Florida Statutes, declaring that CCRC-M and CCRC-S are executive branch agencies. The petition claimed that the office was a “legislative agency,” rather than an executive agency, and therefore section 11.062 did not apply to CCRC-M.[2]
On January 11, 2007, after a hearing, the order on review was issued by the ALJ. The ALJ found that the Horn Report “expressed” what the order characterized as “the challenged construction of Section *530 11.062.” According to the order, the Department “construes Section 11.062 to mean that CCRC-MR is an executive agency” prohibited from “using public funds to lobby the legislative or executive branches of government.” The “challenged construction” was determined to be a rule because “[t]he agency statement of general applicability interprets and implements Section 11.062.” On January 12, 2007, the Department filed its Notice of Appeal.

II. Analysis

Assuming, without deciding, that appel-lees had standing to bring the unadopted rule challenge, we hold that the ALJ erred when it found the Department had a “rule” that CCRC-M is an executive agency.
A party who is substantially affected by an agency statement not adopted as a rule may file a petition asserting that the policy is invalid in violation of the rulemaking requirement of- 120.54(1)(a). “An unpromulgated rule constitutes an invalid exercise of delegated legislative authority and, therefore, is unenforceable.” Dep’t of Revenue of State of Fla. v. Vanjaria Enter., Inc., 675 So.2d 252, 255 (Fla. 5th DCA 1996). However, in order for appellees’ rule challenge to succeed, the evidence must show that the challenged agency statement constitutes a “rule.”' A rule is defined as follows:
‘Rule’ means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.
§ 120.52(15), Fla. Stat. (2006). “An agency statement that either requires compliance, creates certain rights while adversely affecting others, or otherwise has the direct and consistent effect of law is a rule.” Vanjaria, 675 So.2d at 255. When deciding whether a challenged action constitutes a rule, a court analyzes the action’s general applicability, requirement of compliance, or direct and consistent effect of law. Volusia County Sch. Bd. v. Volusia Homes Builders Ass’n, Inc., 946 So.2d 1084, 1089 (Fla. 5th DCA 2006).
The Horn Report appears to be the focus of appellees’ contention below that the Department had an unpromulgated rule that CCRC-M was an executive branch agency. The statements contained in the Horn report do not amount to a rule. The statements were never self-executing or capable of granting or taking away rights of any person by its own terms. See Fla. State Univ. v. Dann, 400 So.2d 1304, 1305 (Fla. 1st DCA 1981). The Horn report merely represents a recommendation by OFI staff that legal action be instituted to collect funds spent in violation of section 11.062.
A recommendation which, standing alone, does not “require compliance, create certain rights while adversely affecting others, or otherwise have the direct and consistent effect of law,” does not constitute a rule. See Volusia Homes Builders, 946 So.2d at 1090. Neither the opinion of OFI that CCRC-M is an executive branch agency, nor the recommendation that action be taken against Mr. Jennings to recover funds used in violation of the anti-lobbying statute, affected any substantive rights of either CCRC-M or Mr. Jennings. As noted, no action was taken against either CCRC-M or Mr. Jennings based on the Department’s alleged “rule” that CCRC-M constituted an executive agency. The Department has not issued an Administrative Complaint or a Notice of Intended Agency Action seeking reimbursement for funds expended for the lob *531 byist. Cf. Reiff v. N.E. Fla. State Hosp., 710 So.2d 1030 (Fla. 1st DCA 1998) (enforcement of clinical privileges in hospital by-laws is an invalid rule); Vanjaria Enters. Inc., 675 So.2d at 255 (holding that enforcement of tax assessment procedure in training manual was an invalid rule). Some agencies routinely engage in investigations to determine whether someone has violated the law, for example, to evaluate the licensure of professionals. See, e.g., Spuza v. Dep’t of Health, 838 So.2d 676 (Fla. 2d DCA 2003) (involving AHCA investigation of doctor to determine if he was convicted of crime that “directly relates to the practice of medicine or to the ability to practice medicine”); Borrego v. Agency for Health Care Admin., 675 So.2d 666 (Fla. 1st DCA 1996) (same). However, merely conducting and reporting on an investigation does not amount to promulgating a rule which can be preemptively challenged prior to any attempt by an agency at enforcement. If the Department had tried to enforce the Horn Report’s recommendation, clearly the Department would have to allow a point of entry for Mr. Jennings, because at that point he would be personally affected. See, e.g., Capeletti Bros., Inc. v. Dep’t of Transp., 362 So.2d 346 (Fla. 1st DCA 1978) (“[A]n agency must grant affected parties a clear point of entry, within a specified time after some recognizable event in investigatory or other free-form proceedings, to formal or informal proceedings under Section 120.57”). An investigator’s recommendation that has not been acted upon is not a rule as that term is defined in the APA.
The ALJ also cited an “inter-agency communication” as evidence of the Department’s rule that the CCRC-M is an executive branch agency. The inter-agency communication was a legal memorandum prepared by Department legal counsel. The memo addressed whether CCRCs are executive branch agencies, to which section 11.062 would apply. The conclusion of the legal memorandum was that CCRC’s are executive branch agencies subject to the provisions of section 11.062. However, a legal memorandum prepared by an agency is specifically excluded from the definition of a rule. Section 120.52(15)(b) states that the term rule does not include: “Legal memoranda or opinions issued to an agency by the Attorney General or agency legal opinions pri- or to their use in connection with an agency action.” Id. (emphasis added). The memorandum was never “used in connection with an agency action,” as the Department never acted in any way on the memorandum, other than to cite it in the Horn Report, which itself was never acted upon. Therefore, the legal memorandum is specifically excluded from the definition of a rule. Furthermore, like the Horn Report, the legal memorandum does not “require compliance, create certain rights while adversely affecting others, or otherwise have the direct and consistent effect of law,” and thus does not constitute a rule. See Volusia Homes Builders, 946 So.2d at 1090.
The ALJ also found other evidence of the Department’s rule, including an “agency addressed memo” reminding state agencies not to use state funds for lobbying purposes, a letter from the Department to Mr. Jennings explaining that his payroll account had been “flagged” due to the investigation, and testimony from members of the Department as to their longstanding understanding of section 11.062. For the same reasons the Horn Report and the legal memorandum do not demonstrate the existence of a rule, we find that the other items do not demonstrate the existence of an unpromulgated, Department rule.

*532
Conclusion

Because the ALJ erred in finding that the Department had a “rule” placing the CCRCs in the executive branch, the order finding an invalid, unpromulgated rule is REVERSED.
WOLF, KAHN, and POLSTON, JJ., concur.

. Section 11.062 prohibits employees of executive, judicial, or quasi-judicial agencies from using state funds to lobby the legislature. It provides that any employee of such an agency who violates the section may have deducted from his or her salary the amount Of state moneys spent improperly.

. Whether CCRC-M is an executive or legislative agency is not an issue on appeal and we express no opinion on the matter.