WEBSTER, J.
 

 In these two consolidated appeals, the State Board of Administration seeks review of a final order of the Division of Administrative Hearings invalidating what the administrative law judge held was an unadopted rule interpreting section 121.4501(4)(a)l.a., Florida Statutes (2002), as permitting state employees to leave the Florida Retirement System Pension Plan and enroll in the alternative Investment Plan by telephone; and Sharon Huberty seeks review of a final order of the Board of Administration denying her request that she be permitted to rescind her election to enroll in the Investment Plan and be returned to the Pension Plan without having to pay the statutorily required buy-back amount. Because we conclude that the Board’s interpretation of section 121.4501(4)(a)l.a. as permitting state employees to leave the Pension Plan and enroll in the Investment Plan by telephone did not constitute an unadopted rule, we reverse the final order of the Division of Administrative Hearings. Because we conclude that there is no error of fact or law in the Board’s final order denying Ms. Huberty’s request that she be permitted to rescind her election to enroll in the Investment Plan and be returned to the Pension Plan without having to pay the statutorily required buy-back amount, we affirm that order.
 

 In 2000, the Florida Legislature enacted section 121.4501, Florida Statutes, creating the Public Employee Optional Retirement Program, known as the “Investment Plan.” It is a defined contribution plan, whereas the Pension Plan is a defined benefit plan. In defined contribution plans such as the Investment Plan, the employee bears the risk of loss in the value of investments chosen by the employee. Before the adoption of section 121.4501, all state employees were covered by the Pension Plan, wherein retirement benefits are calculated based on a fixed formula, and the member bears no risk of loss. The Investment Plan became available to state employees during the summer of 2002. Section 121.4501(4)(a)l.a., Florida Statutes, provides that any employee electing to participate in the Investment Plan rather than the Pension Plan must do so “in writing or by electronic means.” The Board construed section 121.4501(4)(a)l.a. as permitting an employee to make that election by telephone, with the conversation recorded electronically and saved.
 

 The deadline for existing employees, including Ms. Huberty, to elect to switch to the new Investment Plan was August 31, 2002. Before the deadline, all state employees had been sent an information booklet. The booklet explained the principal differences between the Investment Plan and the Pension Plan, warning that the value of the former would depend on the performance of the investments made. The booklet also explained that employees electing to switch to the Investment Plan would have one opportunity to switch back to the Pension Plan. It also explained, however, that those wishing to return to the Pension Plan would have to buy back in and that, if they did not have enough money in their Investment Plan at the time, they would have to make up the difference from other resources. Finally, the booklet advised that employees could make the election to switch to the Investment Plan either online or by telephone.
 

 
 *1146
 
 It is undisputed that, before making a decision, Ms. Huberty (who had a college degree and had completed one semester of work toward a master’s in business administration) spoke with her financial advisor at Raymond James regarding her options, and that the financial advisor recommended that she invest in four funds identified in the Investment Plan information. Ms. Huberty subsequently called the telephone hotline that had been established by the Board. From the transcript of the recording of the conversation between Ms. Huberty and the representative answering the call, it is clear that Ms. Huberty was electing to switch to the Investment Plan.
 

 Following her enrollment in the Investment Plan, Ms. Huberty received quarterly reports for six years indicating her membership in that plan, and stating the value of her account and the performance of the funds she had selected. It was not until after the value of her investments had declined for almost a year that Ms. Huberty again called the hotline, complaining that she had just realized that she was enrolled in the Investment Plan, and did not understand how that could have happened.
 

 In July of 2009, the balance in Ms. Hu-berty’s Investment Plan account was approximately $80,000.00 less than the amount required for her to buy back in to the Pension Plan. Ms. Huberty requested that she be permitted to transfer back to the Pension Plan without having to pay the buy-back cost. The Board denied her request, and she subsequently filed two petitions seeking administrative hearings-one requesting that she be permitted to return to the Pension Plan without having to pay the buy-back cost, and the other requesting that the Board’s use of a telephone hotline to permit employees to exercise their election to switch from the Pension Plan to the Investment Plan be determined to be invalid as an unadopted rule. The two petitions were consolidated. Following a hearing, the administrative law judge issued a final order holding that the Board’s use of the telephone hotline constituted an unadopted rule and, accordingly, invalidated that rule. The administrative law judge also issued a recommended order in which he reiterated that use of the telephone hotline constituted an invalid unadopted rule, but concluded that Ms. Huberty’s conduct for six years following her election to switch to the Investment Plan had ratified her initial election and that, accordingly, she should not be permitted to switch back to the Pension Plan without paying the required buy-back cost. The Board ultimately denied Ms. Huberty’s request that she be permitted to switch back to the Pension Plan without having to pay the buy-back cost. These two appeals follow.
 

 Section 121.4501(4)(a)l.a. requires that the election to switch from the Pension Plan to the Investment Plan “be made in writing or by electronic means.” The adjective “electronic” is not further defined. The Board construed section 121.4501(4)(a)l.a. as permitting an employee to make that election by telephone, with the conversation recorded electronically and saved. As we have previously held, an agency’s interpretation of a statute is entitled to considerable deference, and “[a] reviewing court properly defers on questions of statutory interpretation to the agency to which the Legislature has given the responsibility and authority to administer the statute, unless the interpretation is clearly erroneous.”
 
 Okeechobee Health Care v. Collins,
 
 726 So.2d 775, 778 (Fla. 1st DCA 1998). We see nothing to suggest that the Board’s interpretation of section 121.4501(4)(a)l.a. is inconsistent with the plain meaning of the language used in that sub-subparagraph. On the contrary,
 
 *1147
 
 it strikes us that the Board has correctly construed that language.
 

 For our purposes, a “rule” is statutorily defined as an “agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule.” § 120.52(16), Fla. Stat. (2008). We have held that “ ‘[a]n agency statement that either requires compliance, creates certain rights while adversely affecting others, or otherwise has the direct and consistent effect of law is a rule.’ ”
 
 Fla. Dep’t of Fin. Servs. v. Capital Collateral Reg’l Counsel-Middle Region,
 
 969 So.2d 527, 530 (Fla. 1st DCA 2007) (quoting from
 
 Dep’t of Rev. v. Vanjaria Enter., Inc.,
 
 675 So.2d 252, 255 (Fla. 5th DCA 1996)). We agree with the Board that its use of the telephone hotline to permit employees to make an election to switch from the Pension Plan to the Investment Plan does not meet this definition of a rule because use of the hotline does not adversely affect any of an employee’s substantive rights; does not constitute a denial or withdrawal of a right an employee might have; does not impose any new or additional requirements on an employee; and does not have “the direct and consistent effect of law.” Rather, the hotline merely provides a means by which an employee might exercise his or her right to switch from the Pension Plan to the Investment Plan, consistent with the relatively clearly expressed purpose of section 121.4501(4)(a)l.a. As we said in
 
 St. Francis Hospital, Inc. v. Department of Health & Rehabilitative Services,
 
 553 So.2d 1351, 1354 (Fla. 1st DCA 1989):
 

 [A]n agency interpretation of a statute which simply reiterates the legislature’s statutory mandate and does not place upon the statute an interpretation that is not readily apparent from its literal reading, nor in and of itself purport to create certain rights, or require compliance, or to otherwise have the direct and consistent effect of the law, is not an unpromulgated rule, and actions based upon such an interpretation are permissible without requiring an agency to go through rulemaking.
 

 Because we conclude that the Board’s interpretation of section 121.4501(4)(a)l.a. as permitting state employees to leave the Pension Plan and enroll in the Investment Plan by telephone did not constitute an unadopted rule, we reverse the final order of the Division of Administrative Hearings. We affirm without further discussion the Board’s final order denying Ms. Huberty’s request that she be permitted to rescind her election to enroll in the Investment Plan and be returned to the Pension Plan without having to pay the statutorily required buy-back cost.
 

 CASE NUMBER 1D09-5452 REVERSED; CASE NUMBER 1D10-0534 AFFIRMED.
 

 LEWIS and MARSTILLER, JJ., concur.