DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**SPEEDY MART, INC.** d/b/a **STUART CHECK CASHING** and
**SHAHER BARGHOUTHY, A & E LA NUMERO 1, INC.,** and **ALFONSO REYES**
Appellants,

v.

**FLORIDA OFFICE OF FINANCIAL REGULATION,**
Appellee.

No. 4D2025-1120

[May 13, 2026]

Administrative appeal from the State of Florida, Office of Financial Regulation; Jodi-Ann V. Livingstone, Judge; L.T. Case No. 24-3213RU.

Colin Mark Roopnarine, Veronica Clifford, and Julie Gallagher of Grossman, Roopnarine & Bayo, LLC, Tallahassee, for appellant Speedy Mart, Inc. d/b/a Stuart Check Cashing and Shaher Barghouthy.

Anthony Cammarata, General Counsel, and Damaris Esperanza Reynolds, Assistant General Counsel of the Office of Financial Regulation, Tallahassee, for appellee.

KLINGENSMITH, J.

Appellants, Speedy Mart, Inc. d/b/a Stuart Check Cashing, and Shaher Barghouthy, appeal the final order rendered by the State of Florida, Division of Administrative Hearings, in favor of Appellee, Florida Office of Financial Regulation ("OFR"). Although Appellants raise several issues, we find merit in only two: (1) whether the administrative law judge ("ALJ") erred in finding that certain challenged statements are not unadopted rules; and (2) whether the ALJ erred by not awarding attorney's fees to Appellants. We reverse on both issues as provided herein.

The OFR is the state agency charged with the licensure and regulatory oversight of money services businesses. Appellants are licensed check cashers subject to the OFR's regulatory oversight, which is required at least once every five years.

The OFR issued an administrative complaint against Appellants, alleging violations of Chapter 560, Florida Statutes (2024), with a proposed monetary penalty and disciplinary action assigned for each violation. Appellants filed a petition which challenged various agency statements, alleging such statements were unadopted rules.

The ALJ conducted a final evidentiary hearing. The ALJ's final order dismissed Appellants' petition, finding that Appellants failed to meet their burden of demonstrating that the OFR applied any unadopted rules in sanctioning Appellants for their violations. Appellants then filed their notice of appeal.

We review an ALJ's conclusions of law in an unadopted rule challenge de novo. *See Volusia Cnty. Sch. Bd. v. Volusia Homes Builders Ass'n, Inc.*, 946 So. 2d 1084, 1089 (Fla. 5th DCA 2006) (citing *Parlato v. Secret Oaks Owners Ass'n*, 793 So. 2d 1158, 1162 (Fla. 1st DCA 2001)). On review of an agency's final order, the appellate court must determine whether the ALJ's findings of fact are supported by competent, substantial evidence. *Harun v. Dep't of Child. & Families*, 837 So. 2d 537, 538 (Fla. 4th DCA 2003). Applying these standards, we address each of Appellants' arguments in turn.

**Agency Rules at Issue**

Section 120.52(16), Florida Statutes (2024), defines a "rule" as follows:

> "Rule" means each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule. The term also includes the amendment or repeal of a rule. The term does not include:
>
> > (a) Internal management memoranda which do not affect either the private interests of any person or any plan or procedure important to the public and which have no application outside the agency issuing the memorandum.

An "unadopted rule" is an agency statement that meets section 120.52(16)'s statutory definition of a rule, but has not been adopted under the rulemaking procedures. *See* § 120.52(20), Fla. Stat. (2024). Moreover, an agency statement must be of "general applicability" to be considered a

2

rule.  *See* § 120.52(16), Fla. Stat. (2024).  Statements of general applicability are "statements which are intended by their own effect to create rights, or to require compliance, or otherwise to have the direct and consistent effect of law."  *McDonald v. Dep't of Banking & Fin.*, 346 So. 2d 569, 581 (Fla. 1st DCA 1977).

"An agency statement that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency is considered a rule."  *Grabba-Leaf, LLC v. Dep't of Bus. & Prof'l Reg.*, 257 So. 3d 1205, 1208 (Fla. 1st DCA 2018) (citation modified).  "Statements that are rules cannot be enforced unless they are formally adopted in accordance with requirements set forth in chapter 120."  *Id.*  "If an agency statement meets the definition of a rule, but hasn't been adopted as a rule under chapter 120, then it is considered an unadopted rule."  *Id.* (citation modified).  If an agency statement merely reiterates a law or declares what is "readily apparent" from the text of a law, however, the statement is not a rule.  *See Amerisure Mut. Ins. Co. v. Dep't of Fin. Servs.*, 156 So. 3d 520, 532 (Fla. 1st DCA 2015).

First, Appellants claim that the OFR's use of the Sanction Computation Worksheet (the "Worksheet") is an unadopted rule.  The penalties assessed against Appellants were calculated using the Worksheet to determine the proposed penalties which are found in Form OFR 560-09, and adopted by rule 69V-560.1000, Florida Administrative Code.  The Worksheet is used to assist the OFR in ensuring that the OFR imposes such penalties in a consistent manner, as required in section 560.1141(2), Florida Statutes (2024).

The Worksheet contains columns indicating the number of violations and sample size, which are used to calculate the violation rate, i.e., the percentage of records examined which contain a violation.  The Worksheet also reflects when fines may be increased and decreased due to aggravating and mitigating circumstances, provides the potential suspension range for each violation, along with an indication of whether license revocation may be sought.

The ALJ found Appellants failed to meet their burden of demonstrating that the OFR's use of the Worksheet is a policy which meets the definition of an unadopted rule.  On this point, we agree with the ALJ.

In *Capital City Check Cashing v. Office of Financial Regulation*, Case No. 14-1291RU (Fla. DOAH July 25, 2014), *aff'd*, 174 So. 3d 997 (Fla. 1st DCA 2015), the ALJ determined that the sanction computation worksheet, along with all related calculations, did not meet the statutory criteria for a

""rule"" and, therefore, did not require formal adoption.  There, the ALJ described the worksheet as follows:

> 67.    Like the examination module, the sanction computation worksheet does not constitute an agency rule.  The worksheet is nothing more than [the chief of OFR's bureau of enforcement] notes of the sanctions to be applied, within the range of sanctions established by rule, for each requirement the licensee is found to be in violation, as well as a tool for calculating the total sanctions.  The worksheet, in and of itself, creates no rights and imposes no penalties on licensees.  If [the OFR chief] abandoned use of the sanction computation worksheet, he would use a calculator to add the sanction amounts for each violation to arrive at the final total.

> 68.    Likewise, the worksheet, in and of itself, does not require compliance with any statute, rule, or regulation, or otherwise have the direct and consistent effect of law.  Rule 69V-560.1000 establishes a range of penalties by type of violation, allowing the [OFR] to exercise its discretion to apply a penalty within the range, or exceeding the range, if circumstances warrant.  The worksheet does not eliminate the exercise of discretion or pre-determine the penalty for any particular violation.

*Capital City Check Cashing*, Case No. 14-1291RU, Final Order at 22-23.

Consistent with *Capital City*, here the ALJ properly found that the Worksheet was only used as a starting point for determining a proposed result in each case.  The Worksheet did not, by its own effect, establish legal requirements, nor did it implement, interpret, or prescribe law or policy.  *See Agency for Health Care Admin. v. Custom Mobility, Inc.*, 995 So. 2d 984, 986 (Fla. 1st DCA 2008) (finding the formula did not by its own effect create rights, require compliance, or have the direct and consistent effect of law).  The Worksheet contains a suggested penalty from which the examiners' managers, bureau chief, division director, and legal counsel may deviate at their discretion.  Therefore, this makes the Worksheet analogous to what was considered in *Department of Highway Safety & Motor Vehicles v. Schluter*, 705 So. 2d 81, 82 (Fla. 1st DCA 1997), where the First District concluded three policies could not be considered statements of general applicability, and should be considered effective merely as guidelines, because the policies' application was subject to the discretion of the employee's supervisor.

Second, Appellants argue the "rate vs. sample size" methodology is not merely a tool of internal convenience, but rather has the force and effect of law. To determine how many violations might be based on a business size, the OFT examines the overall volume of records of the transactions that the licensee has conducted, and requests a reasonable sampling that would provide the OFR with the means necessary for review. A violation rate is determined from the records that are sampled during the examination. Because the Worksheet merely restates the minimum and maximum range of penalties within which the agency retains the discretion to determine the appropriate sanction, the Worksheet functions solely as a tool—not a rule—in the process of the OFR's determination of the proper proposed penalties already provided by law.

Third, Appellants argue the twenty-five percent multiplier or reducer, when applied to a fine in consideration of the aggravating and mitigating factors, as well as the "cooperation mitigator" utilized to reduce or eliminate suspensions and establish an initial baseline for determining the recommended penalties applicable to a licensee, is an unadopted rule. On this point, we agree with Appellants.

Pursuant to section 560.1141, the Commission shall adopt mitigators and aggravators. Rule 69V-560.1000 includes a list of factors that would qualify as mitigators and provides the OFR with the means to mitigate the proposed penalty and reduce the penalty based on those factors.

The "cooperation mitigator" as listed in rule 69V-560.1000 provides, "[t]he money services business is responsive to the [OFR's] requests or inquiries or made no attempt to impede or delay the [OFR] in its examination or investigation of the underlying misconduct." No language in this rule limits the mitigator's application to the removal of suspensions only. However, the OFR applies this mitigator exclusively to eliminate suspensions and not to reduce monetary fines or revocations.

Additionally, by assigning a fixed, nondiscretionary value—twenty-five percent—to aggravators and mitigators, the OFR has imposed a formulaic framework that gives section 560.1141 a meaning not apparent from the statutory text and is generally applicable. *See Amerisure Mut. Ins. Co.*, 156 So. 3d at 532; *McDonald*, 346 So. 2d at 581.

In short, the twenty-five percent aggravators and mitigators formula, along with selective application of rule 69V-560.1000, constitutes an unpromulgated rule. We therefore reverse and remand on this issue.

Fourth, Appellants argue the OFR's use and application of the term

"minor violations" in the Worksheet is an unadopted rule. The ALJ found that Appellants failed to meet their burden of demonstrating that the OFR's use and application of the term "minor violations" met the definition of an unadopted rule. In so deciding, the ALJ noted that section 560.1141 requires the Commission to adopt, by rule, disciplinary guidelines that distinguish minor violations from those that endanger the public health, safety, or welfare. We find Appellants' argument on this point meritless.

Section 560.1141(2) requires the Commission to adopt by rule disciplinary guidelines that ""shall specify a meaningful range of designated penalties based upon the severity and repetition of specific offenses and that distinguish *minor violations* from those that endanger the public health, safety, or welfare; that provide reasonable and meaningful notice to the public of likely penalties that may be imposed for proscribed conduct; and that ensure that such penalties are imposed in a consistent manner by the office."." (emphasis added).

The OFR adopted rule 69V-560.1000(2), which provides:

(a) For first citations identified in the disciplinary guidelines as minor violations, the Office shall issue a notice of noncompliance except when the Office identifies aggravating circumstances that would warrant a more severe penalty.

(b) For second citations identified in the disciplinary guidelines as minor violations, the Office may issue a written agreement which is not adopted by final order imposing an administrative fine. Written agreements may be used only when the violations are limited to minor violations.

Form OFR-560-09, adopted by reference in rule 69V-560.1000, identifies which of the potential violations is considered a "minor violation." Specifically, the Form shows five separate statutes for which a first citation may be considered a minor violation. Thus, the ALJ properly observed that Form OFR-560-09 identifies which of the potential violations is considered a "minor violation" and we affirm that finding.

Fifth, Appellants argue the requirement that check cashers "implement" an Anti-Money Laundering Program ("AML Program") constitutes an unadopted rule. Appellants contend that the OFR has failed to adopt a rule defining the term or clarifying the standard which the OFR uses to determine when "implementation" has or has not occurred in regard to the AML Program. The ALJ rejected this claim and found that the OFR's enforcement of the state and federal requirements does not

constitute a policy which meets the definition of a rule. Here we find the ALJ was correct.

31 C.F.R. § 1022.210(a) states:

> Each money services business, as defined by § 1010.100(ff) of this chapter, shall develop, implement, and maintain an effective anti-money laundering program. An effective anti-money laundering program is one that is reasonably designed to prevent the money services business from being used to facilitate money laundering and the financing of terrorist activities.

Appellants specifically argue that the OFR has adopted a blanket interpretation that any alleged deficiency in a licensee's AML Program constitutes a 100% violation of the implementation requirement, regardless of the nature, scope, or context of the deviation. Pursuant to rule 69V-560.609(2) and 31 C.F.R. § 1022.320, Appellants are required to submit suspicious activity reports ("SARs") to the Financial Crimes Enforcement Network ("FinCEN") no later than thirty calendar days after the date of initial detection of the facts that constitute the basis for filing the report.

From a sampling of files examined, the OFR found approximately 134 instances where Appellants cashed checks after the annual check cashing limit set by Appellants had been reached. The OFR then reviewed Appellants' FinCEN filings and determined that Appellants filed no SARs of the suspicious activity. Appellants failed to file SARs when the total of checks cashed by corporate customers exceeded the check cashing limits established for them by Appellants, in violation of section 560.309(5), Florida Statutes (2024), and rule 69V-560.609(4), Florida Administrative Code.

The word "implement," as found in 31 C.F.R. section 1022.210, can be reasonably defined as "to take steps to put into practice," especially "to give practical effect and ensure of actual fulfillment by concrete measures." *Implement*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/implement (last visited Apr. 2, 2026). Consistent with the word's plain meaning, the check cashers are required to carry out the policies that have been developed and maintained pursuant to that section. Here, Appellants failed to file any SARs from the approximately 134 instances found where Appellants cashed checks after the annual check cashing limit had been reached. Thus, the ALJ properly concluded that the OFR's enforcement of the state and federal requirements does not

constitute a policy which meets the definition of an unadopted rule.

Sixth, Appellants argue the OFR's requirement that a driver's license must be current (not expired) is an unadopted rule. Appellants assert that the OFR took an impermissibly expansive interpretation of the statutory requirement found in section 560.310(2)(b), Florida Statutes (2024), which mandates that licensees obtain a "valid driver license" from a customer when cashing checks.

Section 560.310(b) provides:

> A copy of the personal identification that bears a photograph of the customer used as identification and presented by the customer. Acceptable personal identification is limited to a *valid* driver license; a state identification card issued by any state of the United States or its territories or the District of Columbia, and showing a photograph and signature; a United States Government Resident Alien Identification Card; a passport; or a United States Military identification card. [(emphasis added)].

Appellants' arguments that an expired driver's license may still serve as a valid identification for financial transactions, and that the statute does not require the driver's license to be current, are flawed. The Merriam-Webster dictionary defines "valid" as "having legal efficacy or force." *Valid*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/valid (last visited Apr. 2, 2026). Therefore, the OFR did not alter the statute, as the plain meaning of a *valid* driver's license is a current or not expired license.

Seventh, Appellants argue the OFR uses rules retroactively by "appl[ying] versions of rule 69V-560 that were not in effect at the time of the alleged conduct," thus effectively creating and enforcing an unadopted rule. Appellants do not identify which version of the rule was applied nor do they provide which version of the rule should have been applied. *See Hammond v. State*, 34 So. 3d 58, 59 (Fla. 4th DCA 2010) (explaining that conclusory arguments are insufficiently presented for appellate review). Appellants also fail to cite anything in the record indicating what version of the rule was used. Thus, the ALJ was correct in concluding that Appellants failed to prove that the OFR retroactively applies a rule or is using an unpromulgated rule.

**Attorney's Fees**

8

Appellants also argue the ALJ erred in not awarding them attorney's fees because the ALJ incorrectly ruled that the standardized penalty calculation and associated Worksheet were not unadopted rules. Section 120.595(4)(a), Florida Statutes (2025), provides:

> If the appellate court or administrative law judge determines that all or part of an agency statement violates s. 120.54(1)(a), or that the agency must immediately discontinue reliance on the statement and any substantially similar statement pursuant to s. 120.56(4)(f), a judgment or order shall be entered against the agency for reasonable costs and reasonable attorney's fees, unless the agency demonstrates that the statement is required by the Federal Government to implement or retain a delegated or approved program or to meet a condition to receipt of federal funds.

As explained above, the aggravation and mitigation statements were unadopted rules. Thus, we reverse and remand this issue for an appropriate fees award under section 120.595(4)(a).

*Affirmed in part, reversed in part, and remanded for further proceedings.*

SHAW and LOTT, JJ., concur.

\* \* \*

***Not final until disposition of timely-filed motion for rehearing.***

9