BLACK, Judge.
Micjo, Inc., appeals the final agency action of the Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco (AB & T), that requires it to pay $47,649.45, plus interest, in Florida excise taxes to AB & T. In this case of first impression, we are called upon to interpret the phrase “wholesale sales price” as it appears in section 210.25(13), Florida Statutes (2009), and as it appears within the context of Florida’s “Tax on Tobacco Products Other Than Cigarettes or Cigars” (OTP).[1] Because we conclude that AB & T’s interpretation of the statute is contrary to the plain meaning of wholesale sales price and does not include the additional costs that the domestic distributor adds to the manufacturer’s unit price of the tobacco, we reverse. As a result, we do not reach Miejo’s constitutional arguments, and its argument that AB & T failed to challenge a portion of the tax assessment within the relevant statute of limitations is moot.

BACKGROUND

Micjo owns a store that imports and distributes Middle Eastern-themed products, including hookah tobacco.[2] As a Florida tobacco distributor, Micjo is licensed and regulated by AB & T, and the hookah tobacco it distributes is subject to Florida’s OTP tax. During the period relevant to this appeal, Micjo purchased its hookah tobacco from domestic distributors (commonly referred to as middlemen) who imported the tobacco from overseas manufacturers. Micjo paid taxes on the unit price of the tobacco but not on the total invoice price, which included federal excise tax, shipping costs, and various other charges.
In 2009, AB & T audited Miejo’s books and records for May 1, 2006, through April 30, 2009. As a result of the audit, AB & T concluded that Micjo underpaid the Florida OTP tax by $47,649.45, plus accrued interest, because it failed to pay taxes on the total invoice price. On March 8, 2010, AB & T informed Micjo by letter that it was pursuing legal action against Miejo’s tobacco license by filing an administrative complaint. Micjo responded by requesting a formal administrative hearing and disputing AB & T’s calculation of the tax. Micjo also disputed the timeliness of certain of the assessments. The parties agreed on a statement of stipulated facts and agreed “[t]he subject of [the] entire dispute centered] on the legal definition of ‘wholesale sales price.’ ” This resulted in an informal hearing pursuant to section 120.57(2), Florida Statutes (2010). AB & T held the hearing and issued a recommended order. In the order, the hearing officer concluded, “[T]he [wholesale sales *126 price] includes delivery charges and the federal excise taxes. It is all components on the invoice that make up the cost to get the product to the purchaser[;] therefore, all components are subject to be taxed.” Micjo timely filed exceptions to the recommended order, raising the issues set forth in this appeal. On December 17, 2010, the final order was entered rejecting Micjo’s exceptions and adopting AB & T’s recommendations in their entirety. As a result, Micjo filed this appeal.

ISSUE

The essence of the dispute is not complicated and involves a pure question of law. The parties disagree as to the taxable components of the wholesale sales price. Micjo claims that wholesale sales price refers only to the unit price of the actual tobacco product and does not include domestic distributor add-ons which are not explicitly part of the tobacco. AB & T interprets wholesale sales price to mean the invoice price paid by Micjo to the domestic distributors, in its entirety, inclusive of the federal excise tax reimbursements, shipping costs, and other various charges.

ANALYSIS

Florida’s OTP statute imposes both a surcharge and a tax upon the wholesale sales price of tobacco that is regulated by the statute. § 210.276(1) (“A surcharge is levied upon all tobacco products in this state and upon any person engaged in business as a distributor of tobacco products at the rate of 60 percent of the wholesale sales price.”); § 210.30(1) (“A tax is hereby imposed upon all tobacco products in this state and upon any person engaged in business as a distributor thereof at the rate of 25 percent of the wholesale sales price of such tobacco products.”).[3] Wholesale sales price is a defined term under the statute. It is “the established price for which a manufacturer sells a tobacco product to a distributor, exclusive of any diminution by volume or other discounts.” § 210.25(13). There are no Florida cases interpreting the definition of wholesale sales price.
AB & T argues that “established price” equals the invoice price. It reasons that the established price consists of the entirety of a domestic distributor’s invoice price, including federal tax, shipping costs, and other charges, because that money is part of the consideration for the purchase of the tobacco. Thus, it suggests that we read into the statute the requirement that the tax base is the total cost of bringing the product to market in Florida.
In support of this position, AB & T reminds us that we owe deference to its interpretation of the statute because it is given the power to administer the statute in question. Dep’t of Revenue v. First Union Nat’l Bank of Fla., 513 So.2d 114, 119 (Fla.1987) (“[T]he administrative construction of a statute by those charged with its enforcement and interpretation is entitled to great weight, and courts generally will not depart from such construction unless it is clearly erroneous or unauthorized.” (citing Gay v. Canada Dry Bottling Co., 59 So.2d 788, 790 (Fla.1952))). We recognize that this is the general rule. Donato v. Am. Tel. & Tel. Co., 767 So.2d 1146, 1153 (Fla.2000). However, we are not constrained by the administrative construction of a statute when the statute is not ambiguous. Id. (“ ‘Administrative construction of a statute, the legislative history of its enactment and other extraneous matters are properly considered only in the construction of a statute of d,oubtful meaning.’ ” (quoting Fla. State Racing *127 Comm’n v. McLaughlin, 102 So.2d 574, 576-77 (Fla.1958))). Since we find the meaning of this statute and the legislature’s language clear, we reject AB & T’s interpretation and rely on the plain meaning of the words used by the legislature. See id. at 1154.
The statute’s language clearly states that the wholesale sales price is based only on the manufacturer’s price of the tobacco product. The phrase “established price for which a manufacturer sells a tobacco product to a distributor” is given its plain meaning by the statute’s own definitions. The statute defines a “manufacturer” as someone who “manufactures and sells tobacco products.” § 210.25(5). Thus, the definition of manufacturer excludes companies that are solely domestic distributors. This is clear from the statute’s separate definition for “distributors.” See § 210.25(4)(a) (defining the applicable definition for “distributor” as “[a]ny person engaged in the business of selling tobacco products in this state who brings, or causes to be brought, into this state from outside the state any tobacco products for sale”). This plain language indicates that the determination of the established price is at the point when the manufacturer sells the tobacco to the domestic distributor.
Although AB & T focuses on the term established price, it fails to give that term its plain meaning within the context of the sentence. The established price is for the sale of the tobacco product. The various other distributor invoice costs for reimbursement of federal excise tax, shipping costs, and other charges, are not part of the tobacco. See § 210.25(11) (defining “tobacco products”). Although the domestic distributor adds those charges to the total invoice price, they are not part of the price that the domestic distributor paid the manufacturer for the tobacco, and thus, they are not part of the manufacturer’s sales price for the tobacco. Further, items such as shipping costs could vary depending on where the domestic distributor ships the tobacco in Florida, and the total invoice price for the same tobacco would not be an established price. See Black’s Law Dictionary 586 (8th ed. 2004) (defining “establish” as “to settle, make, or fix firmly”).
Based on this reasoning, we conclude the plain meaning of wholesale sales price is the manufacturer’s sales price of the tobacco and not the domestic distributor’s invoice price. This interpretation is also consistent with AB & T’s own rules for tobacco product invoices. See Fla. Admin. Code R. 61A-10.054(h) (requiring invoices for tobacco products from wholesale dealers to indicate the “number of units of each brand of tobacco products, wholesale price per unit, and discount per unit sold to the retailer”).[4]
Because wholesale sales price means the manufacturer’s price for the tobacco and because Micjo paid the Florida OTP tax based on this price, it complied with the terms of the statute. Although AB & T also cites out-of-state cases and tax commission opinions to support its position, these authorities do not persuade us. *128 Since we find the language of the Florida Legislature is clear, we are not required to defer to AB & T’s interpretation of the statute; thus, if we are not deferring to a Florida agency’s interpretation, the nonbinding authority of other states and commissions is even less persuasive. However, even if they were persuasive, the authorities cited are factually inappo-site. See U.S. Tobacco Sales & Mktg. Co., Inc. v. Wash. Dep’t of Revenue, 96 Wash.App. 932, 982 P.2d 652, 654 (1999) (addressing the definition of wholesale sales price — which was identical to Florida’s definition — where the manufacturer and the distributor were affiliated companies and concluding that the established price was the invoice price or fair market value, inclusive of various manufacturer’s costs); 2005 Wash. Sess. Laws Ch. 180, § 2 (amending RCW 82.26.010 by taking out the term and definition for wholesale sales price and replacing it with the term “taxable sales price” and a detailed, multiple subsection definition); see also State of Ill., Dep’t of Revenue, Letter No. ST 09-0002-PLR, 2009 WL 1163618 (addressing the definition of wholesale sales price in the context of a company selling tobacco to a middleman distributor). Here, AB & T is arguing that the distributor’s invoice price, not the manufacturer’s invoice price, is the established price. Additionally, the reasoning of the Washington court is not persuasive and does not fully support AB & T’s position. See U.S. Tobacco Sales & Mktg., 982 P.2d at 657 (finding other state statutes that clearly defined the manufacturer’s selling price as the invoice price were similar to Washington’s statute that did not define it as invoice price and concluding that the established price did not “need [to] include the value that is added to the products after the manufacturer sells them”).
Because the language of the statute is clear, we do not reach Micjo’s constitutional arguments. Moreover, Micjo paid the appropriate amount of taxes; thus, the second issue raised by Micjo concerning the statute of limitations for a portion of AB & T’s tax assessment is moot. Accordingly, we reverse the agency’s final order. See § 120.68(7)(d).
Reversed.
WALLACE, J., and BAUMANN, HERBERT, JR., Associate Judge, Concur.

. For ease of reference, we will refer to Florida's "Tax on Tobacco Products Other Than Cigarettes or Cigars” as the "Other Tobacco Products” tax. See §§ 210.25-.75.

. As pointed out by Micjo in its brief, Hookah tobacco is a popular form of tobacco in Middle Eastern countries. It is typically flavored and smoked through a hookah, a large water pipe.

. The parties do not dispute the fact that hookah tobacco is subject to these sections. See §210.25(11) (defining "tobacco products” under the OTP tax).

. Further illustrating the accuracy of this interpretation is Micjo’s argument concerning Florida’s OTP tax on direct imports of hookah tobacco from overseas manufacturers. Micjo argues that before 2006, it purchased hookah tobacco directly from the manufacturer; there were no middlemen distributors. It asserts that it directly paid the federal excise tax to the federal government, and it was not required to pay any Florida OTP taxes on the federal tax. Although Micjo is now purchasing its tobacco from middlemen distributors, Micjo correctly contends that it is illogical for AB & T to require it to pay Florida OTP tax on the federal tax because it is now paying the federal tax to the middlemen distributors in the form of a reimbursement.