IN THE DISTRICT COURT OF APPEAL
FIRST DISTRICT, STATE OF FLORIDA

BRANDY'S PRODUCTS, INC.,

Appellant,

v.

DEPARTMENT OF BUSINESS
AND PROFESSIONAL
REGULATION, DIVISION OF
ALCOHOLIC BEVERAGES
AND TOBACCO,

Appellee.

_____/

NOT FINAL UNTIL TIME EXPIRES TO
FILE MOTION FOR REHEARING AND
DISPOSITION THEREOF IF FILED

CASE NO. 1D15-3101

Opinion filed April 6, 2016.

An appeal from the Department of Business and Professional Regulation.

Gerald J. Donnini II, Joseph C. Moffa, and James McAuley, of Moffa, Gainor, & Sutton, P.A., Fort Lauderdale, for Appellant.

Pamela Jo Bondi, Attorney General, and Elizabeth Teegen, Assistant Attorney General, Tallahassee, for Appellee.

WETHERELL, J.

In this administrative appeal, Appellant contends that the final order issued by Appellee (the agency) erroneously determined that the cigar wraps – or, as they

are colloquially known, "blunt wraps" – distributed by Appellant constitute "loose tobacco suitable for smoking" under the definition of "tobacco products" in section 210.25(11), Florida Statutes. We agree. Accordingly, we reverse the final order.

In March 2013, the agency notified Appellant that it owed almost $72,000 in taxes, surcharges, penalties, and interest (the assessment) on the blunt wraps it distributed to Florida retailers from July 1, 2009,[1] through August 2011. Appellant challenged the assessment and the dispute was referred to the Division of Administrative Hearings for a formal administrative hearing. After the hearing, the administrative law judge (ALJ) issued an order recommending that the assessment be set aside because "a blunt wrap is no more loose tobacco than a piece of writing paper is loose wood." The agency rejected the ALJ's recommendation (and the legal conclusions on which it was based) and issued a final order directing Appellant to pay the assessment in full. This appeal followed.

The blunt wraps distributed by Appellant are made of tobacco, wood pulp,

---

[1] Appellant also distributed blunt wraps to Florida retailers prior to July 1, 2009, but the agency did not start assessing tobacco taxes and surcharges on blunt wraps until this date. The agency's decision to start taxing blunt wraps was not based on a change in Florida law as the definition of "tobacco products" in section 210.25(11) has remained unchanged since its original enactment in 1985. Instead, the record reflects that the agency's decision was based on it becoming aware of the widespread distribution of blunt wraps in Florida and "Congress' enactment of legislation which expanded the Internal Revenue Code's definition of 'roll-your-own tobacco' to include tobacco-based wrappers for cigarettes or cigars, thereby subjecting blunt wraps purchased after March 31, 2009, to taxation at the federal level."

2

and other materials, and they are similar to rolling papers in that they are designed to be used as the outer wrapper of homemade cigars. The ALJ had the opportunity to physically inspect a blunt wrap at the hearing and he described it as "a distinct, cohesive, uniform product, which upon inspection is readily seen to have been cut to a specific, predetermined shape." Additionally, the ALJ found that "[n]o tobacco, as such, is visible when examining a blunt wrap, much less 'loose' tobacco or any other 'loose' ingredients for that matter."

Because it is undisputed that the ALJ's findings are supported by competent substantial evidence, the narrow issue on appeal is whether, as a matter of law, the product described by the ALJ falls with the statutory definition of "tobacco products." We review this issue under the de novo standard of review. See Amerisure Mut. Ins. Co. v. Fla. Dep't of Fin. Servs., 156 So. 3d 520, 529 (Fla. 1st DCA 2015).

The agency is responsible for administering the tax on tobacco products under chapter 210, Florida Statutes. Part II of the chapter, which governs the tax on tobacco products other than cigarettes and cigars, defines "tobacco products" to mean:

> loose tobacco suitable for smoking; snuff; snuff flour; cavendish; plug and twist tobacco; fine cuts and other chewing tobaccos; shorts; refuse scraps; clippings, cuttings, and sweepings of tobacco, and other kinds and forms of tobacco prepared in such manner as to be suitable for chewing; but "tobacco products" does not

3

include cigarettes, as defined by s. 210.01(1), or cigars.

§ 210.25(11), Fla. Stat. (emphasis added). The parties agree that the only portion of the definition that could conceivably encompass the blunt wraps distributed by Appellant is the phrase "loose tobacco suitable for smoking." Accordingly, this case boils down to the meaning of that phrase and, more specifically, the meaning of the phrase "loose tobacco."

When construing a statute, the court must first look to the plain meaning of the words used by the Legislature. See Verizon Bus. Purchasing, LLC v. Dep't of Revenue, 164 So. 3d 806, 809 (Fla. 1st DCA 2015) (citing W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 9 (Fla. 2012)). If the language of the statute is unambiguous and conveys a clear and definite meaning, the court must apply that meaning even if it conflicts with the interpretation of the statute adopted by the administrative agency charged with enforcing the statute. See Verizon Fla., Inc. v. Jacobs, 810 So. 2d 906, 908 (Fla. 2002) ("An agency's interpretation of the statute it is charged with enforcing is entitled to great deference . . . [and] a court will not depart from the contemporaneous construction of a statute by a state agency charged with its enforcement unless the construction is 'clearly erroneous.'"); Verizon Bus. Purchasing, 164 So. 3d at 812 ("Judicial deference does not require that courts adopt an agency's interpretation of a statute when the agency's interpretation cannot be reconciled with the plain language of the statute."); Micjo,

4

Inc. v. Dep't of Bus. & Prof'l Regulation, 78 So. 3d 124, 126-27 (Fla. 2d DCA 2012) (rejecting the agency's interpretation of the definition of "wholesale sales price" in section 210.25(13) because the interpretation was inconsistent with the plain language of the statute).

The statutory phrase "loose tobacco suitable for smoking" is clear and unambiguous, and we agree with the ALJ that "giving the words used in section 210.25(11) their plain and ordinary signification, the definition . . . does not include blunt wraps within its reach." The phrase "loose tobacco" is not an industry-specific term of art, so we refer to the dictionary definition of "loose" to ascertain the meaning of the phrase. See OB/GYN Specialists of Palm Beaches, P.A. v. Mejia, 134 So. 3d 1084, 1088 (Fla. 4th DCA 2014) (noting that in determining the meaning of a word or phrase used in a statute courts must "distinguish between terms of art that may have specialized meanings and other words that are ordinarily given a dictionary definition"). The dictionary defines "loose" to mean "not rigidly fastened or securely attached," "not brought together in a bundle, container, or binding," "not dense, close, or compact in structure or arrangement," and "not solid." See Loose, Merriam-Webster Online Dictionary, www.merriam-webster.com/dictionary/loose (last visited Mar. 14, 2016). Accordingly, tobacco that is densely bound together to make a solid, uniform, cohesive product like the blunt wraps at issue in this case is not "loose tobacco" for

5

purposes of section 210.25(11).

In reaching this decision, we have not overlooked the agency's argument that the phrase "loose tobacco suitable for smoking" should be broadly construed to encompass any product comprised of the cured and de-stemmed parts of a tobacco leaf that is intended to be inhaled by smoking.[2]  There are two main problems with this argument.

First, it is well-settled that tax statutes are to be construed narrowly, not broadly.  See Maas Bros., Inc. v. Dickinson, 195 So. 2d 193, 198 (Fla. 1967); see also Verizon Bus. Purchasing, 164 So. 3d at 809 ("[S]tatutes imposing taxes and penalties must be strictly construed against the taxing authority, and any ambiguity in the provision of a tax statute must be resolved in the taxpayer's favor.").  This is because "the duty to pay taxes, while necessary to the business of the sovereign, is still a duty of pure statutory creation and taxes may be collected only within the clear definite boundaries recited by the statute." Maas Bros., 195 So. 2d at 198.

_____

[2]  Nor have we overlooked Appellant's argument that the agency also failed to prove that the blunt wraps, on their own, are "suitable for smoking."  See Creager Mercantile Co., Inc. v. Colo. Dep't of Revenue, __ P.3d __, 2015 WL 795264, at *2 (Colo. Ct. App. Feb. 12, 2015) (holding that blunt wraps are not subject to Colorado's tax on tobacco products – which, similar to section 250.25(11), applies to products "prepared in such manner as to be suitable for . . . smoking" – because blunt wraps are "more like a rolling paper than the tobacco that fills it" in that they "are not particularly well adapted or appropriate for smoking on their own"), cert. granted, 2015 WL 7177295 (Colo. Nov. 16, 2015).  However, we agree with the ALJ that the agency's purported failure of proof on this issue is "so completely overshadowed by the conclusion that blunt wraps are not loose tobacco as to be superfluous to the outcome [of this case]."

6

Second, the agency's argument effectively reads the word "loose" out of the statute and replaces it with the word "all." Although there may be sound policy reasons for imposing the taxes and surcharges under part II of chapter 210 on all products suitable for smoking that are made in whole or part of cured, de-stemmed tobacco,[3] only the Legislature has the authority to amend the definition of "tobacco products" in section 210.25(11) to accomplish that end. Accordingly, the agency's policy arguments should be directed to the Legislature.[4]

In sum, for the reasons stated above, we reverse the agency's determination that the blunt wraps distributed by Appellant are taxable "tobacco products" and we remand for entry of an amended final order setting aside the assessment against

---

[3] For example, the final order reasoned that it would be "wrong" to conclude that taxable loose tobacco would become exempt from taxation merely because it was combined with other materials into a paper-like form, particularly since the resulting product is specifically designed to be used in smoking. Additionally, in its brief and at oral argument, the agency argued that taxing blunt wraps as "tobacco products" would be consistent with the legislative intent underlying chapter 210 because the wraps contain tobacco and are used to smoke tobacco, and the purpose of the tobacco taxes and surcharges is to offset the substantial health care costs associated with smoking and other uses of tobacco.

[4] It appears that the issue framed by this case is already on the Legislature's radar because bills were introduced in 2015 and 2016 to amend the definition of "tobacco products" in section 210.25(11) to definitively include "products, including wraps, made in whole or part from tobacco leaves for use in . . . smoking." See Fla. SB 7074 (2015); Fla. HB 7099 (2016). The 2015 bill died in committee, and although the 2016 bill passed the Legislature, the language that would have amended the definition of "tobacco products" was removed from the bill during the legislative process. Compare Fla. HB 7099, § 14 (2016) (Second Engrossed), with Fla. HB 7099 (2016) (Enrolled).

7

Appellant as recommended by the ALJ.

REVERSED and REMANDED with instructions.

ROWE and OSTERHAUS, JJ., CONCUR.