# FIRST DISTRICT COURT OF APPEAL
# STATE OF FLORIDA

_____

No. 1D16-4273
_____

GRABBA-LEAF, LLC,

    Appellant,

    v.

DEPARTMENT OF BUSINESS AND
PROFESSIONAL REGULATION,
DIVISION OF ALCOHOLIC
BEVERAGES AND TOBACCO,

    Appellee.

_____

On appeal from the Division of Administrative Hearings.
J. Lawrence Johnston, Administrative Law Judge.

November 6, 2018

OSTERHAUS, J.

Grabba-Leaf, LLC, filed an unadopted rule challenge in 2016, just after the Florida Department of Business and Professional Regulation issued a memorandum to distributors of tobacco products changing its practice of taxing tobacco wraps. The memo stated that the Department would no longer tax "homogenized tobacco wraps" because of a court decision, but would continue taxing "whole leaf" tobacco wraps as "tobacco products." The Department interpreted whole leaf wraps to qualify as "loose tobacco suitable for smoking" under the definition of "tobacco products." § 210.25(12), Fla. Stat. But Grabba-Leaf argues that the Department's policy and interpretation of the statute required formal agency rulemaking, not simply just a memo to tobacco

distributors. We agree. Because the policy and practice set forth in the memo alters the Department's tax policy, makes new distinctions between taxable and non-taxable tobacco wraps, and includes taxing whole leaf tobacco products that aren't clearly covered by the applicable statutory definition, we conclude that the Department's statement constitutes an unadopted rule.

## I.

The appellant, Grabba-Leaf, is a licensed distributor of tobacco wrap products (known colloquially as "blunt wraps"). After the federal government began taxing blunt wraps in 2009, the State of Florida followed suit by applying its "other tobacco products" tax to tobacco wraps. Florida's blunt wrap distributors were not pleased. Distributor Brandy's Products, Inc., challenged the State's tax on the basis that its wraps were not taxable "tobacco products" as defined by § 210.25, Florida Statutes. And its argument ultimately prevailed before this court. *See Brandy's Prods., Inc. v. Dep't of Bus. & Prof'l Regulation,* 188 So. 3d 130, 133 (Fla. 1st DCA 2016) (reversing the agency's determination that Brandy's blunt wraps "are taxable 'tobacco products'").

Following the *Brandy's* decision, the Department amended its tax policy to carve out Brandy's Products-like tobacco wraps, but continue taxing other wraps. The Department sent a memorandum to licensed distributors of tobacco products taking the position that "*homogenized* tobacco wrap products," like those sold by Brandy's Products, would not be taxed. But that it would continue taxing whole leaf blunt wraps as "tobacco products." *See* §§ 210.276 & 210.30, Fla. Stat.

In response to the memo, Grabba-Leaf challenged the new tax policy as an unadopted rule. *See* § 120.56(4), Fla. Stat. The challenge culminated below in an administrative hearing, where Grabba-Leaf argued that the Department was unlawfully enforcing interpretations of the statute and of the opinion in *Brandy's* without having satisfied its rulemaking obligations.

An administrative law judge, however, concluded that rulemaking wasn't required. In his view, the Department's memo applied the plain meaning of a clear and unambiguous statute to Grabba-Leaf's wraps: "[I]t is readily apparent that whole leaf, non-

2

homogenized cigar wraps meet [§ 210.25(12)'s] statutory definition of loose tobacco suitable for smoking." Grabba-Leaf timely appealed this final order.

## II.

We review the ALJ's conclusions of law in this unadopted rule challenge de novo. *See Volusia Cty. Sch. Bd. v. Volusia Home Builders Ass'n, Inc.*, 946 So. 2d 1084, 1089 (Fla. 5th DCA 2006). Grabba-Leaf's argument on appeal strikes at the heart of the Department's authority, in the absence of rulemaking, to assess taxes against products that only arguably fall within the parameters of a tax statute. Grabba-Leaf doesn't argue that its wraps cannot be taxed as "tobacco products" under the statute (not yet at least). Rather, it argues that the Department must initiate rulemaking before applying that tax to its whole leaf tobacco wraps, because it isn't clear that they are "loose tobacco suitable for smoking." § 210.25(12), Fla. Stat.

## A.

Florida's Constitution divides the power of the state government between three branches: the legislative, executive, and judicial branches. Art. II, § 3, Fla. Const. Each branch possesses "its own powers and responsibilities." *Bush v. Schiavo*, 885 So. 2d 321, 329 (Fla. 2004). Generally speaking, the Florida Constitution grants the power to make the laws to the legislative branch and the power to execute the laws to the executive branch. Various agencies within the executive branch perform the role of interpreting and enforcing Florida's laws in everyday areas of life, including taxation. But their authority is constrained. Executive agencies can neither assume the power to enact law nor exercise unrestricted discretion in carrying out the laws. *See Sims v. State*, 754 So. 2d 657, 668 (Fla. 2000) (recognizing that "the Legislature may not delegate the power to enact a law or the right to exercise unrestricted discretion in applying the law"). Agency interpretations and applications must comport with the laws they are carrying out. And if they cannot be squared with the laws, their interpretations and applications must give way. *See, e.g.*, *Verizon Bus. Purchasing, LLC v. Dep't of Revenue*, 164 So. 3d 806, 812 (Fla. 1st DCA 2015) ("Judicial deference does not require that courts adopt an agency's interpretation of a statute when the agency's

3

interpretation cannot be reconciled with the plain language of the statute.").

An agency statement that "implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency" is considered a "rule." §§ 120.52(16), 120.56(4)(a), Fla. Stat. Statements that are rules cannot be enforced unless they are formally adopted in accordance with requirements set forth in chapter 120. *See* § 120.54, Fla. Stat. If an agency statement meets the definition of a rule, but hasn't been adopted as a rule under chapter 120, then it is considered an "unadopted rule." § 120.52(20), Fla. Stat. Agencies may not enforce an unadopted rule against a party's substantial interests. § 120.57(e)1., Fla. Stat.; *Coventry First, LLC v. State, Office of Ins. Regulation*, 38 So. 3d 200, 203 (Fla. 1st DCA 2010) (quoting *Dep't of Revenue v. Vanjaria Enters., Inc.*, 675 So. 2d 252, 255 (Fla. 5th DCA 1996)).

If an agency statement merely reiterates a law, or declares what is "readily apparent" from the text of a law, however, the statement is not considered a rule. *See, e.g.*, *Amerisure Mut. Ins. Co. v. Dep't of Fin. Servs.*, 156 So. 3d 520, 532 (Fla. 1st DCA 2015); *St. Francis Hosp., Inc. v. Dep't of Health and Rehab. Servs.*, 553 So. 2d 1351, 1354 (Fla. 1st DCA 1989). The parties' arguments in this case focus on this rulemaking exception. We must decide whether the Department's 2016 memorandum, setting forth its post-*Brandy's* intention to tax only *whole leaf* blunt wraps, amounts to a simple reiteration of what is "readily apparent" from the text of § 210.25(12).

B.

After this court's decision in *Brandy's*, the Department issued a memorandum interpreting our opinion to prohibit the taxation of blunt wraps made partly of tobacco, but not of whole leaf wraps consisting completely of tobacco. In accordance with its interpretation, the Department altered its practice of taxing all wraps and announced going forward that it would only be taxing "whole leaf, non-homogenized" wraps. In changing its policy, the Department did not initiate rulemaking.[1] Rather, it viewed its

---

[1] The Division of Alcoholic Beverages and Tobacco possesses

4

policy as reiterating the court's decision and as carrying out its obligation to tax "loose tobacco suitable for smoking." § 210.25(12), Fla. Stat.[2] The Department considers itself free to forgo rulemaking because its policy is "readily apparent from its literal reading" of the statute.

We aren't convinced, however, that its authority to tax whole leaf blunt wraps is readily apparent from the statute. Whether and how § 210.25(12)'s "tobacco products" definition applies to blunt wraps is not an easy question. Prior to 2009, the statute wasn't applied to blunt wraps.[3] After that, the Department began interpreting the statute to apply to *all* blunt wrap products. When Brandy's Products challenged the tax, this court determined that the "loose tobacco" part of the statute didn't apply to its blunt wraps. A debate exists about the breadth of our *Brandy's* opinion. Some language in the *Brandy's* opinion suggests that it forbade the taxation of blunt wraps across the board:

---

authority to adopt rules to enforce chapter 210, part II's provisions for taxing loose tobacco products. *See* § 210.75, Fla. Stat.

[2] On July 1, 2016, the definition of "tobacco products" was moved, without being amended, from subsection 210.25(11) to subsection 210.25(12). Although this dispute pre-dated the change, this opinion will use and refer to the current subsection, which lists the following "tobacco products" as taxable:

> *[L]oose tobacco suitable for smoking*; snuff; snuff flour; cavendish; plug and twist tobacco; fine cuts and other chewing tobaccos; shorts; refuse scraps; clippings, cuttings, and sweepings of tobacco, and other kinds and forms of tobacco prepared in such manner as to be suitable for chewing; but "tobacco products" does not include cigarettes . . . or cigars.

§ 210.25(12), Fla. Stat. (emphasis added).

[3] Blunt wraps weren't taxed as "loose tobacco suitable for smoking" until 2009, some 24 years after § 210.25(12) was first enacted. *See* Ch. 85-141, §§ 1, 5, at 1023-29, Laws of Fla. (1985).

> [W]e agree with the ALJ that 'giving the words used in section 210.25(11) their plain and ordinary signification, the definition . . . does not include blunt wraps within its reach.
>
> [W]e agree with the ALJ that the agency's purported failure of proof on [whether blunt wraps are "suitable for smoking"] is so completely overshadowed by the conclusion that blunt wraps are not loose tobacco as to be superfluous to the outcome of this case.

*Brandy's*, 188 So. 3d at 132 & n.2 (quotation omitted). At least one court has interpreted *Brandy's* to extend, for instance, to Grabba-Leaf's whole leaf wraps.[4]

But the dissent correctly points out that *Brandy's* limited its relief to Brandy's Products' own wraps: "we reverse the agency's determination that the blunt wraps distributed by Appellant are taxable 'tobacco products.'" And the make-up of Brandy's Products' wraps and Grabba-Leaf's wraps are different. It is into this interpretive vacuum that the Department's 2016 memorandum introduced a composition-based distinction between blunt wrap products. It took the position in its memorandum that *Brandy's* only applied to "homogenized" blunt wraps, and not to "whole leaf" blunt wraps. This differentiation between blunt wraps was novel for purposes of interpreting § 210.25(12) and *Brandy's*, because neither draws a composition-based distinction between blunt wrap products. And so, while the Department was right that Brandy's Products' wraps were only partly made of tobacco, and Grabba-Leaf's wraps are 100%, whole tobacco leaves, it isn't clear that this is a distinction with a difference for tax purposes. Nonetheless, the Department's memo to tobacco distributors established this new

---

[4] In a tax refund case brought by Grabba-Leaf in South Florida, a trial court citing *Brandy's* refunded more than $828,000 in overpaid taxes to Grabba-Leaf associated with its whole leaf blunt wraps. *See Grabba-Leaf, LLC v. Dep't of Bus. & Prof'l Regulation*, No. 2015-CA-12414-25 (Fla. 17th Cir. Ct. Oct. 25, 2016), *aff'd sub nom. Dep't of Bus. & Prof'l Regulation v. Grabba-Leaf, LLC,* No. 4D16-4166, 2017 WL 5195127 (Table) (Fla. 4th DCA, Nov. 9, 2017).

6

composition-based taxing regime for blunt wraps. Under its terms, the Department would no longer be taxing the Brandy's-like wraps, but would continue taxing whole leaf wraps. According to the memo, distributors would now have to "consider the composition of the product" to determine their tax liability and "seek clarification from the product manufacturer if necessary."

We think this new approach required agency rulemaking. Not only did it represent a tax policy change for the Department, but the Department's interpretation isn't clearly correct under § 210.25(12), as might excuse it from having to satisfy rulemaking requirements. As we noted in *Brandy's*, the statute itself doesn't define "loose tobacco." So we must construe these terms "in their plain and ordinary sense." *State v. Brake*, 796 So. 2d 522, 528 (Fla. 2001) (citing *State v. Mitro*, 700 So. 2d 643, 645 (Fla. 1997)). In *Brandy's*, we relied on the dictionary definition of "loose," which is "not rigidly fastened or securely attached," "not brought together in a bundle, container, or binding," "not dense, close, or compact in structure or arrangement," and "not solid." *Brandy's*, 188 So. 3d at 132 (citing Loose, *Merriam–Webster Online Dictionary*, www.merriam-webster.com/dictionary/loose). The definition of "tobacco" is also important here, which is: "the leaves of cultivated tobacco prepared for use in smoking or chewing or as snuff, [or] the manufactured products of tobacco." Tobacco, *Merriam–Webster Online Dictionary*, www.merriam-webster.com/dictionary/tobacco. Because cultivated and prepared leaves are themselves "tobacco," it isn't clear that use of the modifier "loose" in the tax statute applies to whole leaf wraps. Rather, "loose" would appear to be surplusage as applied to these wraps.

In addition to straight textual problems with "loose," the rest of the "tobacco products" definition identifies products that are further manufactured from tobacco leaves. "[S]nuff; snuff flour; cavendish; plug and twist tobacco; fine cuts and other chewing tobaccos; shorts; refuse scraps; clippings, cuttings, sweepings" do not consist of whole leaves, but of cultivated tobacco fragments. § 210.25(12), Fla. Stat. Similarly, the prototypical "loose tobacco" product, on which the ALJ and parties alike agree is "loose tobacco," is filler tobacco. Like the other stuff in § 210.25(12), filler tobacco is shredded and chopped from cultivated tobacco leaves for smoking in a pipe, blunt wrap, or other suitable vessel. Filler

7

tobacco, too, is structurally distinct from a whole leaf tobacco wrap, which is comparatively compact, unbroken, and solid, such that it can bundle, contain, and secure loose filler tobacco. This also leads to the conclusion that blunt wraps are different than the "tobacco products" included in the statute because they aren't similarly "loose."[5]

Along this line, it is noteworthy that other state and federal definitional statutes specifically identify tobacco leaves and wraps when they are meant to be included. Section 569.002(6), Florida Statutes, for instance, defines "tobacco products" to include both "loose tobacco leaves" and "products made from tobacco leaves, in whole or in part, . . . which can be used for smoking." 26 U.S.C. § 5702(o) similarly identifies filler tobacco separately from wraps—"tobacco which . . . is suitable for use . . . for making cigarettes and cigars [and] wrappers thereof"—in defining what are federally taxable tobacco products. In contrast, the definition in § 210.25 doesn't mention tobacco leaves or wraps, but only "loose tobacco."

That countervailing arguments exist that whole-leaf blunt wraps are "loose" tobacco suitable for smoking is not the test for an exemption from rulemaking. Rather, the test is whether an agency statement reiterates a law, or declares what is "readily apparent" from the text of a law. *Amerisure Mut. Ins. Co.*, 156 So. 3d at 532. Because § 210.25(12) does not clearly include whole leaf tobacco wraps, we conclude that the Department cannot by memorandum extend the statutory definition to cover them and disregard its rulemaking obligations.

Finally, we recognize the limits of our holding and of the issue presented here. We haven't been called upon to finally resolve the question of whether whole leaf blunt wraps are "loose tobacco

---

[5] We recognized in *Brandy's* that "tax statutes [must] be construed narrowly, not broadly." 188 So. 3d at 132. "[T]axes may be collected only within the clear definite boundaries recited by the statute." *Id.* (quoting *Maas Bros., Inc. v. Dickinson*, 195 So. 2d 193, 198 (Fla. 1967)). And "any ambiguity in the provision of a tax statute must be resolved in the taxpayer's favor." *Verizon*, 164 So. 3d at 809.

suitable for smoking."[6] And we needn't do that in order to resolve Grabba Leaf's unadopted rule challenge. Rather, we more modestly conclude that the Department's memo—which recognizes two different classes of blunt wraps, one taxable and one not—does not simply reiterate § 210.25(12)'s text. *See St. Francis Hosp. Inc.*, 553 So. 2d at 1354. The Department's memo constitutes a "rule" because it is a statement of general applicability that implements and interprets the law. § 120.52(16), Fla. Stat. And it constitutes an "unadopted rule" because rulemaking procedures weren't followed, and it is not "readily apparent" from the statute itself that non-homogenized, whole leaf blunt wraps can be taxed as "loose tobacco suitable for smoking." *Cf. Dep't of Revenue v. U.S. Sugar Corp.*, 388 So. 2d 596, 598 (Fla. 1st DCA 1980) (concluding that an agency-adopted policy distinction was not "readily apparent" in the statute and constituted an unadopted rule).

## III.

For these reasons, we conclude that the Department's memorandum setting forth a policy to tax whole leaf non-homogenized blunt wraps constitutes an unadopted administrative rule that cannot be enforced.

REVERSED.

WOLF, J., concurs; KELSEY, J., dissents with opinion.

---

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

---

[6] We don't finally resolve the "loose" issue here as relates to whole-leaf wraps, or whether whole-leaf blunt wraps can be considered "suitable for smoking" under § 210.25(12). *See also Brandy's,* 188 So. 3d at 132 n.2 (also not resolving whether blunt wraps are "suitable for smoking").

_____

KELSEY, J., dissenting.

I respectfully dissent because I conclude that the Administrative Law Judge did not err in holding that the agency's memorandum was not an unadopted rule, but rather merely announced this Court's ruling in *Brandy's Products, Inc. v. Department of Business & Professional Regulation,* 188 So. 3d 130 (Fla. 1st DCA 2016), and adhered to the plain meaning of the taxing statute. Under Florida's Administrative Procedure Act, neither act requires rulemaking. That resolves this case entirely in favor of the agency. The ALJ correctly dismissed Appellant's Petition to Determine Invalidity of Agency Statement filed under section 120.56(4) of the Florida Statutes, and we should affirm.

A rule is an "agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency and includes any form which imposes any requirement or solicits any information not specifically required by statute or by an existing rule." § 120.52(16), Fla. Stat. (2018). The agency's "statement" here—its memorandum noting that the *Brandy's* decision was released, that this Court held that the specific products there at issue were not taxable, that the decision did not address whole-leaf tobacco wraps, and thus that such whole-leaf wraps would continue to be taxed (as they had been since 2009 under the plain language of the taxing statute)—did not implement the statute, did not interpret the statute, and did not prescribe law or policy. The agency's statement merely reiterated the holding of the then-new *Brandy's* decision, and state that the pre-existing taxation of non-*Brandy's* products (under the plain meaning of the statute) would continue. Under the APA, this was not an unadopted agency rule.

## 1. The Plain Meaning of the Statute.

Even though this is an APA issue, and not a taxation issue as in *Brandy's*, the analysis properly begins with the plain language of the taxing statute. The "other tobacco products" or OTP tax (i.e., not cigarettes, taxed in a separate part of the statute; or cigars, not taxed), is imposed in what is now section 210.25(12), Florida

10

Statutes (2018) (formerly subsection (11)), using language unchanged since its enactment in 1985 (emphasis added):

> (12) "Tobacco products" means *loose tobacco suitable for smoking*; snuff; snuff flour; cavendish; plug and twist tobacco; fine cuts and other chewing tobaccos; shorts; refuse scraps; clippings, cuttings, and sweepings of tobacco, and other kinds and forms of tobacco prepared in such manner as to be suitable for chewing; but "tobacco products" does not include cigarettes, as defined by s. 210.01(1), or cigars.

As we correctly noted in *Brandy's,* when construing a statute we must first determine whether statutory language is clear and unambiguous, and if it is, then we must look first to the plain meaning of the statute. 188 So. 3d at 132. This Court in *Brandy's* expressly held that the specific statutory language at issue here– "loose tobacco suitable for smoking"–"is clear and unambiguous." *Id.* To be taxable under the plain meaning of this statutory phrase, tobacco must be both (a) "loose" and (b) "suitable for smoking." *Brandy's* correctly employed a plain-meaning approach to defining "loose tobacco," but because we concluded that the product at issue was not "loose tobacco," we did not analyze whether the product was "suitable for smoking." *Id.* at 132 & n.2. We need to analyze both phrases here.

**(a) "'Loose' Tobacco."**

Our analysis in *Brandy's* was specific to, and limited to, the particular product at issue there. The parties, and apparently the industry as a whole, refer to the *Brandy's*-type products as "homogenized" wraps. The dictionary definition of "homogenized" is "to blend (diverse elements) into a mixture that is the same throughout; to make uniform in structure or composition throughout." *See* Homogenize, *Merriam-Webster Online Dictionary,* www.merriam-webster.com/dictionary/homogenize (last visited August 30, 2018). Appellant's representative in this litigation freely admitted that the *Brandy's* manufactured wrap product "is made out of a few different things, not just tobacco," and thus is "homogenized" (his description). The wraps at issue in *Brandy's* were not 100% tobacco. They were not even

11

predominantly tobacco. Instead, they were predominantly wood pulp and gums used as adhesives, combined with tobacco pulp in a manufacturing process to produce a cut-out tobacco-infused paper rectangle that witnesses in that case as well as in this case described as looking and feeling very much like a brown paper bag or a thin piece of cardboard. *See Brandy's*, 188 So. 3d at 131. Evidence in this case established that the *Brandy's*-type manufactured products are patented.

Only that specific product with those specific characteristics was at issue in *Brandy's*, and this Court made that very clear as the factual basis for its ruling. *Id.* at 131 ("[T]he narrow issue on appeal is whether, as a matter of law, the product described by the ALJ falls within the statutory definition of 'tobacco products.'") (emphasis added); *see also id.* at 132 ("Accordingly, tobacco that is densely bound together to make a solid, uniform, cohesive product *like the blunt wraps at issue in this case* is not 'loose tobacco' for purposes of section 210.25(11).") (emphasis added). The function of the product was not the basis for this Court's decision. This Court in *Brandy's*, after finding the statutory term "loose tobacco" to be "clear and unambiguous," resorted only to the dictionary definition of "loose," that being "'not rigidly fastened or securely attached,' 'not brought together in a bundle, container, or binding,' 'not dense, close or compact in structure or arrangement,' and 'not solid.'" *Brandy's,* 188 So. 3d at 132. The ALJ who rendered the recommended order in *Brandy's* had observed that "a blunt wrap is no more loose tobacco than a piece of writing paper is loose wood," and that "[n]o tobacco, as such, is visible when examining a blunt wrap, much less 'loose' tobacco or any other 'loose' ingredients for that matter." *Id.* at 131. We agreed with that analysis in *Brandy's*. *Id.* Our holding in *Brandy's* was that, because the tobacco content of those wraps was by no means "loose" from the other components of the wrap, that product was not within the plain meaning of the taxing statute.

In contrast, Appellant's wraps are natural, cured tobacco leaves, not combined with any other ingredients. They are leaves and only leaves, not tobacco-infused paper, not bound to or combined with anything else. The undisputed evidence below with respect to Appellant's leaves was that "There's nothing more, nothing less, to it." They look like leaves and feel like leaves—

because they *are* leaves and only leaves. They are brown because they have been air-cured. They come in a pouch, and their packaging describes them as "natural tobacco wraps that are inspected and selected from the finest tobacco leaves available, ensuring a smooth smoke from beginning to end. Slow, smooth burning." The package includes a Surgeon General's warning about the danger of tobacco use. The packaging contains no patent marking. The evidence showed that users might cut or tear the leaves as needed; and Appellant's counsel admitted at oral argument that users could grind or chop the leaves for use as filler tobacco, although he opined that they probably would not do so because the leaves are selected for qualities that make them better suited to use as an outside wrapper. It was also admitted at oral argument that packages of whole tobacco leaves are available for purchase, and that those are taxed under the OTP statute.

Given the undisputed facts about the physical characteristics of Appellant's whole-leaf wraps, they fall within the dictionary definition of "loose" tobacco, as we applied it in *Brandy's*. Our holding in *Brandy's* means that tobacco is not "loose" when it is mixed with wood pulp and gum to form a manufactured product in which the different ingredients are bound uniformly and inextricably to one another. The function of the product as a wrap was not part of the analysis. In direct contrast to the *Brandy's* product, Appellant's leaves are not mixed with anything. They are not fastened or attached to anything or bound to anything. They are not dense, close, compact, or solid in structure. They are tobacco leaves, nothing else. They are loose tobacco within the plain meaning of the statute. Appellant's argument that only filler tobacco is "loose" tobacco within the meaning of the statute, improperly restricts the statute in a way that the Legislature did not. *St. Joe Paper Co. v. Dep't of Rev.*, 460 So. 2d 399, 401-02 (Fla. 1st DCA 1984) ("The Department's interpretation would require the court to add the word "amended" to Section 214.14, and it is axiomatic that the court is not free to add words to steer a statute to a meaning which its plain wording does not supply."). As the ALJ observed, chopped or ground filler tobacco is loose tobacco, but the Legislature did not limit loose tobacco to filler tobacco—and neither can we. Appellant's attempt to claim that its leaves are "a solid, uniform, cohesive product" because they are leaves all the way through themselves and the cells of the leaves are closely

13

bound to one another within the leaves, is a wholesale misapplication of *Brandy's* and its specific holding, which was limited to the product at issue there and the fact that its minor component ingredient of tobacco was bound inextricably to other non-tobacco ingredients. Appellant's leaves are loose tobacco. This brings us to whether they are "suitable for smoking."

**(b) "Suitable for Smoking."**

The *Brandy's* Court did not analyze this statutory phrase because it became irrelevant in light of the clear finding that the product at issue was not "loose" tobacco in the first place. 188 So. 3d at 132 & n.2. But because Appellant's leaves are loose tobacco within the meaning of the statute, it becomes necessary to move to the second part of the test of OTP taxability and determine whether tobacco leaves are "suitable for smoking" within the plain meaning of the taxing statute.

The ALJ invoked the plain meaning of "suitable"—having the qualities that are right, needed or appropriate for something. This was consistent with the dictionary definition of the word. *See* Suitable, *Merriam-Webster Online Dictionary,* www.merriam-webster.com/dictionary/suitable (defining suitable as "adapted to a use or purpose") (last visited August 30, 2018). Appellant does not challenge this interpretation of "suitable" standing alone, but argues that the statute should be limited to tobacco suitable for smoking "on its own." The ALJ properly rejected this argument. In construing a clear and unambiguous statute, we are not at liberty to add words to it. *St. Joe Paper,* 460 So. 2d at 401-02. Our task is to apply the plain meaning of "smoking."

The dictionary defines "smoking" as the verb form of "smoke," meaning "to inhale and exhale the fumes of burning plant material and especially tobacco." *See* Smoke, *Merriam-Webster Online Dictionary*, www.merriam-webster.com/dictionary/smoke (last visited August 30, 2018). Florida law defines "smoking" in several statutes. The Clean Indoor Air Act defines it as "inhaling, exhaling, burning, carrying, or possessing any lighted tobacco product, including cigarettes, cigars, pipe tobacco, and any other lighted tobacco product." § 386.203(10), Fla. Stat. (2018). The medical marijuana statute defines it as "burning or igniting a

14

substance and inhaling the smoke." § 381.986(1)(n), Fla. Stat. (2018). The public nuisance statute defines it as "possess[ing] any ignited tobacco product or other ignited substance . . . ." § 823.12, Fla. Stat. (2018). "Smoking," used alone, is not limited to a product being smoked with something else. Smoking is smoking. If the Legislature had intended to limit "suitable for smoking" in the way Appellants suggest, it could have done so, but has consistently done the opposite and invoked a broad and plain-meaning definition of "smoking." It did so in the OTP statute. Thus, the ALJ correctly construed "suitable for smoking" as extending to Appellant's tobacco leaves heated and consumed during the act of smoking.

To support its restricted definition of "smoking" as limited to "smoking on its own," Appellant relied below on a Colorado decision that was not yet final. The case became final well over a year ago, and ended up being contrary to Appellant's position, although Appellant failed to notify us of that development. In *Colorado Department of Revenue v. Creager Mercantile Co.*, 395 P. 3d 741 (2017) (En Banc), the majority of the en banc Colorado Supreme Court held that the Colorado statute imposing a tax on other tobacco products (which differed from the Florida statute by not being limited to "loose" tobacco), encompassed even homogenized blunt wraps because they are "consumed by the act of smoking" and are therefore "suitable for smoking." 395 P. 3d at 745. While *Creager* interprets Colorado law and is not binding in Florida, it is directly contrary to Appellant's argument.

Appellants get the opposite of the *Brandy's* answer on the tax question—not because of any difference in the law, but because of the material factual differences between the nature of the manufactured products at issue in *Brandy's* and the natural whole tobacco leaves at issue here. Brandy's Products succeeded in establishing that its product was not taxable under section 210.25(11) (now (12)), by carefully distinguishing its product based on its physical characteristics as a manufactured blend of inseparable wood pulp, tobacco pulp, and gums. While Appellant attempts to tag along on that result based on the function of its product, function of the product is not a factor under the taxing statute and was not a factor in *Brandy's*. Appellant's product is

taxable. But as already noted, this is an APA rulemaking case, not a tax case.

## 2. The Memorandum is not an Unadopted Rule.

The tax question informs the APA question. The question before the Court is whether the agency's post-*Brandy's* memorandum included an unadopted rule. The agency announced this Court's holding in *Brandy's*, and stated that the status quo pre-*Brandy's* continued to apply to the whole leaf products not addressed in *Brandy's*. If Appellant's product falls within the plain meaning of the statutory language that we expressly held in *Brandy's* was "clear and unambiguous," then it was taxable by direct operation of the taxing statute. Thus, two propositions become clear: no rulemaking was required to apply a clear and unambiguous statute; and rulemaking is not required when an agency reiterates a court holding. Neither agency statement is an unadopted rule.

As the agency's representative testified, the post-*Brandy's* agency memo did nothing other than "stop[] the taxation of the homogenized product based on [*Brandy's*]," leaving all other blunt wrap products taxed as they had been since the State started imposing the tax. The reasoning and result in *Brandy's* serve to highlight the factual distinctions between taxable and non-taxable wrap products, leaving intact the State's long-standing policy and practice of taxing other tobacco products *not* like those in *Brandy's*, which was based on the plain language of the taxing statute itself. No rulemaking was required.

### (a) Unambiguous Statute Requires No Rule.

The parties here, as in *Brandy's*, agreed that since 2009, under statutory language in place since 1985, and without adopting any rules to do so, the agency had been taxing both the tobacco-infused paper product at issue in *Brandy's* and the whole leaves of tobacco at issue here. We noted in *Brandy's* that "[t]he agency's decision to start taxing blunt wraps was not based on a change in Florida law as the definition of 'tobacco products' in section 210.25(11) has remained unchanged since its original enactment in 1985." 188 So. 3d at 131 n.1. The agency's position

16

all along has been that the statute imposed the tax by its plain meaning, and therefore rulemaking was not required.

Florida law is clear that agencies are not required to promulgate rules when those agencies merely apply the plain language of a statute:

> An agency interpretation of a statute which simply reiterates the legislature's statutory mandate and does not place upon the statute an interpretation that is not readily apparent from its literal reading, nor in and of itself purport to create certain rights, or require compliance, or to otherwise have the direct and consistent effect of the law is not an unpromulgated rule, and action based upon such an interpretation are permissible without requiring an agency to go through rulemaking.

*Amerisure Mutual Ins. Co. v. Dep't of Fin. Svcs.*, 156 So. 3d 520, 532 (Fla. 1st DCA 2015) (quoting *St. Francis Hosp, Inc. v. Dep't of Health & Rehab. Svcs.*, 553 So. 2d 1351, 1354 (Fla. 1st DCA 1989)).

This fundamental premise of administrative procedure harkens back to the early days of the Administrative Procedure Act, when former Judge Robert P. Smith, Jr. of this Court explained that rulemaking is required only for agency statements intended "*by their own effect*" to make law:

> [T]he Section 120.54 rulemaking procedures are imposed only on policy statements of general applicability, i.e., those statements which are intended *by their own effect* to create rights, or to require compliance, or otherwise *to have the direct and consistent effect of law*.

*McDonald v. Dep't of Banking & Fin.*, 346 So. 2d 569, 581 (Fla. 1st DCA 1977) (emphasis added) (superseded by statute on other grounds). This principle gives effect to the fundamental proposition that the Florida Legislature alone *makes* statutory law, and confers on state agencies only limited authority to make rules that "implement or interpret the specific powers and duties granted by the enabling statute." § 120.536(1), Fla. Stat. (2018). No agency has "the authority to implement statutory provisions

17

setting forth general legislative intent or policy." *Id.* Rulemaking requirements were never intended to "encompass virtually any utterance by an agency." *McDonald,* 346 So. 2d at 581. Where a statute is clear and unambiguous and can be interpreted according to its plain meaning, there is neither authority nor need for agency rulemaking. *Id.*

We have continued to rely on the language of *McDonald's* explanation that agencies must make rules only for statements that "by their own effect" have the effect of law. We expressly applied exactly that principle in *Coventry First, LLC v. Office of Insurance Regulation*, 38 So. 3d 200 (Fla. 1st DCA 2010). In pertinent part, we held that the agency's letters to licensees requesting information about out-of-state settlements, and its procedures for obtaining such records, were not unadopted rules. *Id.* at 204-05. Rather, the agency's communications and statements were authorized by statute, and did not themselves have the effect of law, and therefore were not improper unadopted rules. *Id.* at 205. In *Agency for Health Care Administration v. Custom Mobility, Inc.*, 995 So. 2d 984 (Fla. 1st DCA 2008), we applied the *McDonald's* language to hold that a formula for calculating overpayments in audits was not an unadopted rule. 995 So. 2d at 986. It did not of itself have the effect of law and it did not implement, interpret, or prescribe law or policy. *Id.* at 986-87.

In *St. Francis Hospital, Inc. v. Department of Health & Rehabilitative Services,* 553 So. 2d 1351, 1354 (Fla. 1st DCA 1989), we held that an agency's statement reiterating the literal meaning of a statute without creating new rights, burdens, or law, is not an unpromulgated rule:

> [A]n agency interpretation of a statute which simply reiterates the legislature's statutory mandate and does not place upon the statute an interpretation that is not readily apparent from its literal reading, nor in and of itself purport to create certain rights, or require compliance, or to otherwise have the direct and consistent effect of the law, is not an unpromulgated rule, and actions based upon such an interpretation are

18

permissible without requiring an agency to go through rulemaking.

We applied this rule in *State Board of Administration v. Huberty*, 46 So. 3d 1144 (Fla. 1st DCA 2010). The statute at issue allowed state employees to elect to participate in the state Investment Plan "in writing or by electronic means." 46 So. 3d at 1146 (quoting § 121.4501(4)(a)1.a.). The agency prepared and distributed a booklet advising state employees that the election could be made online or by telephone. A state employee had given the state clear instructions by recorded phone call to switch her retirement account to the Investment Plan, but then became disappointed in the Investment Plan's performance. She claimed that her telephonic instructions to switch her to the Investment Plan should be rescinded because the agency did not adopt a rule providing that telephonic communications were encompassed within the statutory phrase "electronic means." We rejected the employee's argument, and held that the agency's plain-meaning interpretation of the statute as including telephone communications within "electronic means" did not require rulemaking. The agency's statement itself did not adversely affect substantive rights, deny or withdraw a pre-existing right, impose any new or additional requirements, or have "the direct and consistent effect of law." 46 So. 3d at 1147 (quoting *Dep't of Rev. v. Vanjaria Enter., Inc.,* 675 So. 2d 252, 255 (Fla. 5th DCA 1996)). *See also, e.g., Envtl. Trust v. State, Dep't of Envtl. Prot.*, 714 So. 2d 493, 498-99 (Fla. 1st DCA 1998) (holding that an agency statement explaining "how an existing rule of general applicability will be applied in a particular set of facts" is not itself an unadopted rule and does not require agency rulemaking).

By the same token here, the agency's memorandum did not constitute an unadopted rule, because it merely presented exactly what this Court had held in *Brandy's*, followed by the statement that nothing else had changed and products other than those addressed in *Brandy's* would continue to be treated the same way they had been since 2009, under the plain meaning of the taxing statute. Such other products had been taxed as Other Tobacco Products (OTPs) since 2009 based on a plain meaning of the statutory phrase "loose tobacco suitable for smoking" – the very phrase that we expressly held in *Brandy's* was "clear and

19

unambiguous." The agency's memorandum did not change any substantive rights, impose any new legal burden, or have the direct effect of law.

Appellant argues that the agency's memorandum was an unadopted rule because it used the phrases "whole-leaf" and "homogenized," which are terms the statute does not use. This argument is unavailing, because these phrases are merely descriptors for the holding in *Brandy's* and for Appellant's product. The parties in *Brandy's* as well as here used these terms to distinguish the two products based on their physical characteristics, and testified that these are the industry terms for the products. The agency's use of undisputed shorthand synonyms for the longer descriptive phrases used in *Brandy's* did not constitute improper rulemaking.

The agency changed nothing. We alone did, and only by applying the plain language of the statute to the specific product at issue in *Brandy's*. Nothing changed for other products, including the whole tobacco leaves at issue in this case. They were taxable under the plain language of the statute from the inception of the State's taxation of them, and they remain so. The agency is not required to promulgate rules upon issuance of this kind of an appellate court decision, and is not required to promulgate rules when it acts within the plain meaning of the taxing statute. To hold otherwise would impose on all agencies a tremendous burden to make rules for virtually every statute and court decision. That is not the law of Florida. Therefore, the agency's post-*Brandy's* memo is not an invalid un-adopted rule. The ALJ properly dismissed Appellant's Petition, and we should affirm.

———————————————————

Gerald J. Donnini II, Joseph C. Moffa, James McAuley, and Jonathan W. Taylor of Moffa, Sutton, & Donnini, P.A., Fort Lauderdale, for Appellant.

Pamela Jo Bondi, Attorney General, and Elizabeth Teegen, Tallahassee, Assistant Attorney General, for Appellee.