# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2022-2802
_____

FLORIDA GAMING CONTROL
COMMISSION,

    Appellant,

    v.

TAMPA BAY DOWNS, INC.,

    Appellee.

_____


On appeal from the Division of Administrative Hearings.
James H. Peterson, III, Administrative Law Judge.


September 11, 2024

M.K. THOMAS, J.

Appellee, Tampa Bay Downs, filed a successful unpromulgated rule challenge after the Division of Pari-Mutuel Wagering (organized under the Florida Gaming Control Commission) denied a request for a tax refund that would have shifted an applied tax rate on handle, the aggregate contributions to pari-mutuel pools, from 5.5% to 0.5% per subsection 550.0951(3)(c)1., Florida Statutes. The Commission appealed, asserting the administrative law judge (ALJ) misinterpreted the operative language of the section and relevant statutory terms to arrive at a conclusion that does not comport with the plain language of the subsection. We disagree and affirm. The Commission's interpretation of the subsection is not readily

apparent from the plain language of its text and constitutes an unpromulgated rule subject to challenge under section 120.56(4)(a), Florida Statutes.

This Court reviews de novo an ALJ's conclusions of law in an unadopted rule challenge. *See Grabba-Leaf, LLC v. Dep't of Bus. and Pro. Regul.,* 257 So. 3d 1205, 1207 (Fla. 1st DCA 2018). An agency statement purporting to set forth a rule or policy cannot be enforced unless adopted by certain statutory procedures. *See* § 120.54(1)(a), Fla. Stat. In general, "if an agency statement merely reiterates a law or restates what is 'readily apparent' from the text of a law, the statement is not considered a rule." *Dep't of Health v. Leafly Holdings, Inc.,* 369 So. 3d 333, 337 (Fla. 1st DCA 2023). That said, where an "agency statement of general applicability implements, interprets, or prescribes law or policy," then the statement amounts to a rule. *See* §§ 120.52(16), 120.56(4)(a), Fla. Stat.

Section 550.0951 governs the payment of daily license fees and taxes by applicable pari-mutuel facilities such as those operated by Appellee and provides:

> Each permitholder shall pay a tax on contributions to pari-mutuel pools, the aggregate of which is hereinafter referred to as "handle" on races or games conducted by the permitholder. The tax is imposed daily and is based on the total contributions to all pari-mutuel pools conducted during the daily performance.

§ 550.0951(3), Fla. Stat. The issue on appeal centers on varied tax rates provided in subsection 550.0951(3)(c)1., the disputed portion of which reads:

> The tax on handle for intertrack wagering is 0.5 percent if the host track and the guest track are thoroughbred permitholders or *if the guest track is located outside the market area of the host track and within the market area of a thoroughbred permitholder currently conducting a live race meet.*

§ 550.0951(3)(c)1., Fla. Stat. (emphasis added).

The ALJ accepted Appellee's position that, as a thoroughbred permitholder operating a pari-mutuel facility that conducts intertrack wagering on simulcast events, their facility thus qualifies as a guest track.* As such, as a thoroughbred permitholder and a guest track, Appellee meets the subsection's requirements to be accorded the 0.5% tax rate, and the Division's denial of the request then amounts to an unpromulgated rule. The Commission's interpretation of the statutory language focuses on the term "market area," which is defined as "an area within 25 miles of a permitholder's track or fronton." § 550.002(18), Fla. Stat. Substituted with its definition, the Commission then reads subsection 550.0951(3)(c)1. as according the 0.5% tax rate to a qualifying guest track only where it is within 25 miles of *another* thoroughbred permitholder conducting a live meet.

We must determine if the Commission's interpretation of the subsection is a derivation readily apparent from the plain language of its text, or if such an interpretation and resulting denial of the tax refund then constitutes an "unadopted rule" pursuant to subsection 120.52(20), Florida Statutes. The Commission's interpretation stands on the implication that the statutory language "within the market area of a thoroughbred permitholder currently conducting a live race meet" is plainly understood to mean a *separate* or *other* thoroughbred permitholder hosting a live meet within 25 miles of a guest track, regardless of the possibility that a thoroughbred permitholder may qualify as a guest track. This interpretation of the subsection goes beyond its plain language by adding or implying additional terms that change its meaning. The language of the section does not preclude a thoroughbred permitholder operating as a host track and meeting

---

* Section 550.002, Florida Statutes, defines a guest track as "a track or fronton receiving or accepting an intertrack wager" and intertrack wager as a "form of pari-mutuel wagering in which wagers are accepted at a permitted, in-stake track, fronton, or pari-mutuel facility on a race or game transmitted from and performed live at, or simulcast signal rebroadcast from, another in-state pari-mutuel facility." § 550.002(11), (16), Fla. Stat.

the criteria for a guest track from qualifying for the 0.5% tax rate on handle.

We reject the Commission's alternative argument that, if there is any ambiguity as to the meaning of the statute, we may look to the legislative intent behind section 550.0951(3)(c)1. as creating a tax exemption which must be "strictly construed against the party claiming [the exemption] . . . and any ambiguity should be resolved against the taxpayer and against the exemption." *Genesis Ministries, Inc. v. Brown*, 250 So. 3d 865, 868 (Fla. 1st DCA 2018); *see also Maas Bros., Inc. v Dickinson*, 195 So. 2d 193, 198 (Fla. 1967). Subsection 550.0951(c)(3)1., through its plain language, only imposes tax rates dependent upon the class of host track and certain criteria for qualifying guest tracks. Even if we were to "strictly construe" statutes creating tax exemptions, the subsection does not imply an exemption to a standard rate or an "exception for something that otherwise would be within the scope of the taxing statute." *Dep't of Rev. of State v. GTA Mobilnet of Tampa, Inc.*, 727 So. 2d 1125, 1128 (Fla. 2d DCA 1999). Absent conditional language in setting forth the varied rates, the at-issue portion of the subsection only sets a 0.5% tax rate where the guest track is within 25 miles of a thoroughbred permitholder, criteria satisfied by Appellee.

The final order is affirmed. The Commission's interpretation of the statute constitutes an unpromulgated rule because it imposes a specific tax rate on Appellee that was not established via proper rulemaking procedures.

AFFIRMED.

LEWIS and WINOKUR, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————

4

Elina Valentine, Deputy General Counsel, Office of the General Counsel, Florida Gaming Control Commission, Tallahassee, for Appellant.

J. Stephen Menton, Tana D. Storey, and Gary R. Rutledge, Rutledge Ecenia, P.A., Tallahassee, for Appellee.