# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D2023-1795
_____

FLORIDA DEPARTMENT OF
HEALTH,

    Appellant,

    v.

PUPS PUB TPA, LLC, & PUPS
PUB ORLANDO, LLC,

    Appellees.

_____

On appeal from the Division of Administrative Hearings.
Lynne A. Quimby-Pennock, Administrative Law Judge.

April 30, 2025

PER CURIAM.

Pups Pub TPA, LLC, and Pups Pub Orlando, LLC (hereinafter "Pups Pub"), are two limited liability companies formed to open dog bars—businesses where patrons can order drinks while their dogs socialize. Below, they challenged statements made by the Florida Department of Health (DOH) which instructed its county health departments (CHDs) that dogs are prohibited from entering a DOH-regulated bar unless they fall within certain exceptions. After a formal hearing, an administrative law judge (ALJ) determined that the challenged statements constituted an unadopted rule that could not be the basis for any agency action.

On appeal, DOH argues that the challenged statements did not apply an unadopted rule. Rather, they reiterated the plain language of rule 64E-11.003(6)(c), Florida Administrative Code. Pups Pub suggests that the language is not so plain, as the rule and the governing statute can be construed as only prohibiting non-exempt dogs from certain areas within bars and lounges.

We agree with DOH that the challenged statements applied the governing law. Therefore, they do not constitute an unadopted rule in derogation of the statutory requirement that agency rules be established through the formal rulemaking process.

I.

DOH has regulatory authority over "the storage, preparation, serving, or display of food in food service establishments . . . ." § 381.0072(1)(a), Fla. Stat. (2023). The statutory definition of "food service establishment" lists several regulated facilities that includes "bars and lounges." § 381.0072(2)(c), Fla. Stat. The term "bars and lounges" is defined by rule 64E-11.002(5), Florida Administrative Code, as "[a] facility which possesses a consumption on premises alcoholic beverage license from the Division of Alcoholic Beverages & Tobacco" that only serves drinks, snack foods, or "time/temperature control for safety foods" that do not require preparation. DOH officials testified below that if a bar serves food beyond the types listed in the rule, it is regulated by the Department of Business and Professional Regulation (DBPR). *See also* § 509.013(5)(b)7., Fla. Stat. (defining a "public food service establishment" regulated by DBPR to exclude "[a]ny place of business where the food available for consumption is limited to ice, beverages with or without garnishment, popcorn, or prepackaged items sold without additions or preparation").

Before opening, a DOH-regulated bar must obtain a sanitation certificate, which requires an application process culminating in a preopening inspection. *See* § 381.0072(4), Fla. Stat. (setting forth the licensing requirements for food service establishments); Fla. Admin. Code R. 64-11.002(28) (defining "sanitation certificate" as "[a] license issued by the department to operate a food service establishment"); Fla. Admin. Code R. 64E-11.013(2) (explaining the application and renewal process for

sanitation certificates). The bar must then pass yearly inspections. The application process and inspections are handled by DOH's sixty-seven CHDs.

In 2020, Pups Pub applied for a sanitation certificate to open a dog bar in Tampa. During the preopening inspection, the Hillsborough County Health Department inspector was aware that the bar would be operating under a business model that allowed dogs to play off-leash in indoor and outdoor play areas. Drinks would be prepared and served only at the bar area. The inspector had previously inspected a bar with a similar business model with a satisfactory result. He likewise approved Pups Pub Tampa, instructing them in his inspection report to install a gate to keep the dogs out of the bar area before allowing dogs in the building. He explained that dogs should not be placed on bar seats or permitted to touch the bar service area. After complying with these instructions, Pups Pub Tampa opened for business. The bar operated without incident for over a year and a half, passing subsequent DOH inspections.

In 2022, the owners of Pups Pub began the process of opening a second location in Orlando. In conversations with an official at the Orange County Health Department, they referenced the Tampa location as an example of how the business would operate. That official contacted an Environmental Supervisor at DOH's Tallahassee office for guidance.

Upon learning about the two Pups Pub locations, the Environmental Supervisor began making inquiries into the operation of similar dog bars. She also conducted a quarterly training and a consistency call with the CHDs, explaining that rule 64E-11.003(6)(c) prohibited live animals from being in food service establishments, subject to exceptions that included service animals and police dogs. But otherwise, dogs were prohibited from entering food service establishments such as DOH-regulated bars even to pass through the building to outdoor play areas. She directed the CHDs to determine if any DOH-licensed bars in their jurisdictions were operating in derogation of the rule.

While these trainings were ongoing, Pups Pub Orlando received a sanitation certificate after a satisfactory preopening

inspection. The bar opened on July 1, 2022. Subsequently, both Pups Pub locations were reinspected and found in violation of rule 64E-11.003(6)(c) due to the presence of dogs in the building.

On February 2, 2023, Pups Pub filed the instant unadopted rule challenge. After an evidentiary hearing, the ALJ concluded that DOH's 2022 trainings applied a new uniform interpretation of rule 64E-11.003(6)(c) that constituted an unadopted rule.

## II.

This case turns on a question of law which we review de novo. *Grabba-Leaf, LLC v. Dep't of Bus. & Prof'l Reg.*, 257 So. 3d 1205, 1207 (Fla. 1st DCA 2018).

Section 120.56(4), Florida Statutes (2023), authorizes a challenge to an agency statement that qualifies as an unadopted rule. An "unadopted rule" is "an agency statement that meets the definition of the term 'rule,' but that has not been adopted pursuant to the requirements of [section 120.54, Florida Statutes]." § 120.52(20), Fla. Stat. (2023). A "rule" is defined as "each agency statement of general applicability that implements, interprets, or prescribes law or policy or describes the procedure or practice requirements of an agency . . . ." § 120.52(16), Fla. Stat. (2023). "If an administrative law judge enters a final order that all or part of an unadopted rule violates s. 120.54(1)(a), the agency must immediately discontinue all reliance upon the unadopted rule or any substantially similar statement as a basis for agency action." § 120.56(4)(e), Fla. Stat. (2023).

Here, DOH argues that the statements made during the 2022 trainings do not constitute an unadopted rule since they simply apply the plain language of the governing law. DOH observes that rule 64E-11.003(6)(c) prohibits non-exempt dogs from being present in a food service establishment and a bar falls within the statutory definition of a "food service establishment."

Pups Pub counters that the rule should be viewed in light of the statutory definition of a "food service establishment," which only allows DOH to regulate the areas within a bar where food is prepared and individual portions are served. In its view, such an

4

interpretation is consistent with initial decisions to allow dogs inside both Pups Pub locations so long as the dogs were kept out of the areas where the drinks were prepared and served.

"Agency interpretations and applications must comport with the laws they are carrying out. And if they cannot be squared with the laws, their interpretations and applications must give way." *Grabba-Leaf*, 257 So. 3d at 1208. But "[i]f an agency statement merely reiterates a law, or declares what is 'readily apparent' from the text of a law, . . . the statement is not considered a rule." *Id.*; *see also Amerisure Mut. Ins. Co. v. Fla. Dep't of Fin. Servs.*, 156 So. 3d 520, 532 (Fla. 1st DCA 2015) (" '[A]n agency interpretation of a statute which simply reiterates the legislature's statutory mandate and does not place upon the statute an interpretation that is not readily apparent from its literal reading . . . is not an unpromulgated rule, and actions based upon such an interpretation are permissible without requiring an agency to go through rulemaking.' " (quoting *State Bd. of Admin. v. Huberty*, 46 So. 3d 1144, 1147 (Fla. 1st DCA 2010))), *superseded on other grounds by constitutional amendment as stated in Lee Mem'l Health Sys. Gulf Coast Med. Ctr. v. Ag. for Health Care Admin.*, 272 So. 3d 431, 437 (Fla. 1st DCA 2019).

Here, rule 64E-11.003(6)(c) states:

> Live Birds and Animals—No live birds or animals, excluding crustacea, shellfish, and fish in aquariums, are allowed in a food service establishment, in vehicles used for transporting food, or in any other area or facility used to conduct food service operations, except as provided under section 413.08, F.S.[1]

The text of the rule broadly prohibits live animals from being in food service establishments. Section 381.0072(2)(c) provides:

---

[1] Section 413.08, Florida Statutes, applies to service animals.

5

**"Food service establishment" means** detention facilities, public or private schools, migrant labor camps, assisted living facilities, facilities participating in the United States Department of Agriculture Afterschool Meal Program that are located at a facility or site that is not inspected by another state agency for compliance with sanitation standards, adult family-care homes, adult day care centers, short-term residential treatment centers, residential treatment facilities, homes for special services, transitional living facilities, crisis stabilization units, hospices, prescribed pediatric extended care centers, intermediate care facilities for persons with developmental disabilities, boarding schools, civic or fraternal organizations, **bars and lounges**, vending machines that dispense potentially hazardous foods at facilities expressly named in this paragraph, and facilities used as temporary food events or mobile food units at any facility expressly named in this paragraph, **where food is prepared and intended for individual portion service, including the site at which individual portions are provided, regardless of whether consumption is on or off the premises and regardless of whether there is a charge for the food**. The term includes a culinary education program where food is prepared and intended for individual portion service, regardless of whether there is a charge for the food or whether the program is inspected by another state agency for compliance with sanitation standards. The term does not include any entity not expressly named in this paragraph; nor does the term include a domestic violence center certified and monitored by the Department of Children and Families under part XII of chapter 39 if the center does not prepare and serve food to its residents and does not advertise food or drink for public consumption.

(emphasis added).

Pups Pub does not contend that bars and lounges are not food service establishments or that dogs do not qualify as "live animals" under the language of the rule. Rather, they rely on the

6

emphasized statutory phrase—"where food is prepared and intended for individual portion service, including the site at which individual portions are provided, regardless of whether consumption is on or off the premises and regardless of whether there is a charge for the food"—in arguing that DOH was limited to regulating the specific area within a food service establishment where the food is prepared and served. They assert that because drinks are only prepared and served at the bar counter, DOH could not regulate other parts of the building such as the customer seating area.

"When construing a statute, the court must first look to the plain meaning of the words used by the Legislature." *Brandy's Prod., Inc. v. Dep't of Bus. & Prof'l Reg.*, 188 So. 3d 130, 132 (Fla. 1st DCA 2016). A fair reading of a statute involves "the application of a governing text to given facts on the basis of how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 33 (2012). "The court must give full effect to all statutory provisions and avoid readings that would render a part of a statute meaningless; additionally, the court may not construe an unambiguous statute in a way that would extend, modify, or limit its express terms or its reasonable and obvious implications." *Vickery v. City of Pensacola*, 342 So. 3d 249, 253 (Fla. 1st DCA 2022) (quoting *Herman v. Bennett*, 278 So. 3d 178, 179–80 (Fla. 1st DCA 2019)). " 'Context always matters' because 'sound interpretation requires paying attention to the whole law, not homing in on isolated words or even isolated sections.'" *State v. McKenzie*, 331 So. 3d 666, 671 (Fla. 2021) (quoting *King v. Burwell*, 576 U.S. 473, 500–01, 135 S.Ct. 2480, 192 L.Ed.2d 483 (2015) (Scalia, J., dissenting)).

Here, a reasonable reader would not understand the emphasized phrase to limit DOH's authority to regulate the listed facilities. Rather, the phrase stands for the unremarkable proposition that a food service establishment is an establishment where food is prepared and served, even if the food is not consumed on site. Nothing in this language indicates that the scope of the definition is altered when the food *is* consumed on site. This reading is consistent with the exclusion from the definition of "a domestic violence center certified and monitored by the

7

Department of Children and Families under part XII of chapter 39 **if the center does not prepare and serve food to its residents and does not advertise food or drink for public consumption**," a place that does not offer food service. It is also consistent with the inclusion of "facilities participating in the United States Department of Agriculture Afterschool Meal Program that are located at a facility or site that is not inspected by another state agency for compliance with sanitation standards"—facilities with a food service component.

Notably, the emphasized phrase in the statutory definition *includes* the site where the portions are provided without *excluding* any other area of the facility. Certainly, in the context of facilities such as schools and hospitals, the phrase can be read to limit DOH to regulating the areas devoted to food service, such as the kitchens and cafeterias, rather than the parts of those facilities with no connection to food service, such as classrooms and hospital rooms. As DOH officials explained below, most of the listed facilities in the statute are otherwise regulated by different agencies. They testified that "bars and lounges" was one of the few terms that needed to be defined by regulation, as the other terms are defined elsewhere by law. But while most of the other listed facilities serve multiple functions unrelated to food service, bars and lounges arguably serve no other function.

Beyond that, the legislature empowered DOH to regulate "the storage, preparation, serving, or display of food in food service establishments . . . ." § 381.0072(1)(a), Fla. Stat. (2023). DOH's duties likewise allow it to:

> advise and consult with the Agency for Health Care Administration, the Department of Business and Professional Regulation, the Department of Agriculture and Consumer Services, and the Department of Children and Families concerning procedures related to the storage, preparation, serving, or display of food at any building, structure, or facility not expressly included in this section that is inspected, licensed, or regulated by those agencies.

*Id.* at (3)(a). DOH was broadly directed to adopt rules concerning:

> the construction, operation, and maintenance of the establishment; lighting, ventilation, laundry rooms, lockers, use and storage of toxic materials and cleaning compounds, and first-aid supplies; plan review; design, construction, installation, location, maintenance, sanitation, and storage of food equipment and utensils; employee training, health, hygiene, and work practices; food supplies, preparation, storage, transportation, and service, including access to the areas where food is stored or prepared; and sanitary facilities and controls, including water supply and sewage disposal; plumbing and toilet facilities; garbage and refuse collection, storage, and disposal; and vermin control.

*Id.* at (3)(b).

This statutory language makes it clear that DOH has authority to regulate more than just the discrete areas in a food service establishment where food is prepared and served. DOH's authority includes food storage areas; display areas; where garbage is collected, stored, or disposed; sanitary facilities; places where chemicals are stored; bathrooms; and vermin control throughout the facility. To interpret DOH's regulatory authority in the fashion proposed by Pups Pub would be to deprive it of power expressly granted by the legislature.

Under these circumstances, DOH's interpretation of the rule prohibiting non-exempt dogs in a food service establishment as pertaining to the entire interior of a bar—a building wholly devoted to food service—is readily apparent from the face of the applicable law.[2] Therefore, DOH was not required to formally adopt a rule to support its interpretation.

---

[2] Insofar as Pups Pubs argues that certain documents prepared by some CHDs treat bars that serve drinks differently than bars that serve limited types of food, there is no textual basis in the law for that distinction. Pups Pub acknowledged that the term "food" is defined by regulation to include beverages. *See* Fla.

9

## III.

When the rule and the governing statute are read in a logical manner that does not restrict the authority clearly given to DOH by the legislature, the challenged statements reiterate what is readily apparent from the applicable law. Therefore, the ALJ erred in concluding that those statements represent an unadopted rule that violates section 120.54(1)(a).

REVERSED and REMANDED.

OSTERHAUS, C.J., and RAY and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Sarah Young Hodges, Chief Appellate Counsel, Florida Department of Health, Tallahassee, for Appellant.

_____

Admin. Code R. 64E-11.002 (incorporating the definitions in paragraph 1-201.10(B), Food Code, 2013 Recommendations of the United States Public Health Service, Food and Drug Administration, NTISP PB2013-110462 ("Food Code")); ¶ 1-201.10(B), Food Code, available at https://www.flrules.org/Gateway/reference.asp?No=Ref-09894 (defining "food" to include beverages). And the definition of "bars and lounges" in rule 64E-11.002(5) makes no distinction between the three categories of bars that fall within DOH's jurisdiction, whether they serve drinks, snacks, or time/temperature control for safety foods. An agency cannot be bound to misinterpret the law. *See M.B. v. Agency for Persons with Disabilities*, 13 So. 3d 509, 512 (Fla. 3d DCA 2009) (upholding the denial of benefits that had previously granted under a Medicaid Waiver Program because "[t]he benefits in question here are subject to very detailed rules and limitations, and there is no vested right to continue receiving services that were not actually authorized").

Tana Storey and Amanda M. Hessein of Rutledge Ecenia, P.A., Tallahassee, for Appellees.